V 12-1172-MEJ

JS 44 CAND (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JASON TRABAKOOLAS and SHEILA STETSON, individually and on behalf of all others similarly situated

**DEFENDANTS** WATTS WATER TECHNOLOGIES, INC., WATTS REGULATOR CO., WATTS ANDERSON-BARROWS METAL CORP., WATTS PLUMBING TECHNOLOGIES (TAIZHO) CO., LTD., SAVARD PLUMBING COMPANY, WOLVERINE BRASS, INC., AND JOHN DOES 1-100

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See attachment

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

◻ 1  U.S. Government Plaintiff

◻ 3 Federal Question *(U.S. Government Not a Party)*

◻ 2  U.S. Government Defendant

☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ◻ 1 | Incorporated or Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ◻ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC 881 | ◻ 422 Appeal 28 USC 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - | ◻ 690 Other | ◻ 423 Withdrawal 28 USC 157 | ◻ 400 State Reapportionment |
| ◻ 130 Miller Act | ◻ 315 Airplane Product Liability | Product Liability | | | ◻ 410 Antitrust |
| ◻ 140 Negotiable Instrument | | ◻ 367 Health Care/ | | | ◻ 430 Banks and Banking |
| ◻ 150 Recovery of Overpayment & Enforcement of Judgment | ◻ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ◻ 450 Commerce |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' Liability | Product Liability | | ◻ 820 Copyrights | ◻ 460 Deportation |
| ◻ 152 Recovery of Defaulted Student Loans | ◻ 340 Marine | ◻ 368 Asbestos Personal Injury Product | | ◻ 830 Patent | ◻ 470 Racketeer Influenced and Corrupt Organizations |
| (Excl. Veterans) | ◻ 345 Marine Product | Liability | **LABOR** | ◻ 840 Trademark | ◻ 480 Consumer Credit |
| ◻ 153 Recovery of Overpayment of Veteran's Benefits | Liability | **PERSONAL PROPERTY** | ◻ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ◻ 490 Cable/Sat TV |
| ◻ 160 Stockholders' Suits | ◻ 350 Motor Vehicle | ◻ 370 Other Fraud | ◻ 720 Labor/Mgmt. Relations | ◻ 861 HIA (1395ff) | ◻ 850 Securities/Commodities/ Exchange |
| ◻ 190 Other Contract | ◻ 355 Motor Vehicle Product Liability | ◻ 371 Truth in Lending | ◻ 740 Railway Labor Act | ◻ 862 Black Lung (923) | ◻ 890 Other Statutory Actions |
| ◻ 195 Contract Product Liability | ◻ 360 Other Personal Injury | ◻ 380 Other Personal Property Damage | ◻ 751 Family and Medical Leave Act | ◻ 863 DIWC/DIWW (405(g)) | ◻ 891 Agricultural Acts |
| ◻ 196 Franchise | ◻ 362 Personal Injury - Med. Malpractice | ◻ 385 Property Damage Product Liability | ◻ 790 Other Labor Litigation | ◻ 864 SSID Title XVI | ◻ 893 Environmental Matters |
| | | | ◻ 791 Empl. Ret. Inc. Security Act | ◻ 865 RSI (405(g)) | ◻ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ◻ 896 Arbitration |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | ◻ 510 Motions to Vacate Sentence | | ◻ 870 Taxes (U.S. Plaintiff or Defendant) | ◻ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ◻ 220 Foreclosure | ◻ 441 Voting | **Habeas Corpus:** | | ◻ 871 IRS—Third Party 26 USC 7609 | ◻ 950 Constitutionality of State Statutes |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 530 General | | | |
| ◻ 240 Torts to Land | ◻ 443 Housing/ Accommodations | ◻ 535 Death Penalty | **IMMIGRATION** | | |
| ☒ 245 Tort Product Liability | ◻ 445 Amer. w/Disabilities - Employment | ◻ 540 Mandamus & Other | ◻ 462 Naturalization Application | | |
| ◻ 290 All Other Real Property | ◻ 446 Amer. w/Disabilities - Other | ◻ 550 Civil Rights | ◻ 463 Habeas Corpus - Alien Detainee | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | (Prisoner Petition) | | |
| | | ◻ 560 Civil Detainee - Conditions of Confinement | ◻ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ◻ 2 Removed from State Court   ◻ 3 Remanded from Appellate Court   ◻ 4 Reinstated or Reopened   ◻ 5 Transferred from another district *(specify)*   ◻ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
1332(d)
Brief description of cause:
Negligence and Design Defect

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $**   CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ◻ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*   ☒ SAN FRANCISCO/OAKLAND   ◻ SAN JOSE   ◻ EUREKA

DATE 03/09/2012   SIGNATURE OF ATTORNEY OF RECORD

Joseph J. Tabacco, Jr. (SBN 75484)
Todd. A. Seaver (SBN 271067)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermandevalerio.com
        tseaver@bermandevalerio.com

Simon Bahne Paris
Patrick Howard
Charles J. Kocher
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Telephone: (215) 575-3985
Facsimile: (215) 496-0999
Email: sparis@smbb.com
        phoward@smbb.com
        ckocher@smbb.com

*(Additional counsel listed on signature page)*

*Counsel for Plaintiffs and the proposed Classes.*

**FILED**

MAR – 8 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TRABAKOOLAS and SHEILA STETSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs<br><br>v.<br><br>WATTS WATER TECHNOLOGIES, INC., WATTS REGULATOR CO., WATTS ANDERSON-BARROWS METAL CORP., WATTS PLUMBING TECHNOLOGIES (TAIZHO) CO., LTD., SAVARD PLUMBING COMPANY, WOLVERINE BRASS, INC., AND JOHN DOES 1-100.<br>                    Defendants. | C**12-01172**  *MEJ*<br>Case No.<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1    Plaintiffs Jason Trabakoolas and Sheila Stetson (hereinafter "Plaintiffs") by and through

2    their undersigned counsel, individually and on behalf of all others similarly situated, allege:

3                                    **NATURE OF THE ACTION**

4        1.      This action exposes latent defects in the design, manufacture, instructions and

5    warnings in Defendants' Flexible Plumbing Toilet Connectors ("Toilet Connector"). A Toilet

6    Connector connects a water fixture shut-off valve to the bottom of a toilet. To connect to the

7    base of the toilet, the Toilet Connector uses a plastic coupling nut. These plastic couplings are

8    uniformly defective in their design, manufacture, and labeling. As a result, the Toilet Connector

9    poses a substantial risk of failure resulting in catastrophic water damage to property.

10       2.      Defendants Watts Water Technologies, Inc. ("Watts Water"), Watts Regulator

11   Co. ("Watts Regulator"), Watts Anderson-Barrows Metals Corp. ("Watts Anderson-Barrows"),

12   Watts Plumbing Technologies (Taizho) Co., Ltd. ("Watts Taizho"), Savard Plumbing Company

13   ("Savard"), Wolverine Brass, Inc. ("Wolverine Brass"), and John Does 1-100 (collectively,

14·  "Defendants") developed, designed, manufactured, assembled, tested, marketed, promoted, sold

15   and/or distributed these defective Toilet Connectors to Plaintiffs and the proposed Classes

16   (defined below) in California and throughout the United States.

17       3.      At all times material hereto, Defendants knew, and have known, about these

18   defects and that the Toilet Connectors were not safe, or even usable, for their intended purposes.

19   Rather than disclose, warn or replace these defective Toilet Connectors, Defendants knowingly

20   concealed, suppressed, and omitted these defects, exposing Plaintiffs and the putative Classes to

21   a substantial risk of significant property damage. With full knowledge of the defects alleged

22   herein, Defendants took to remediate the defects with a redesigned Toilet Connector.

23   Defendants, however, never notified Plaintiffs and the members of the Classes that their Toilet

24   Connectors contained a defect or that a remediated product was available. Instead, Defendants

25   left Plaintiffs and the putative Classes exposed to the risk of catastrophic water damage by the

26   defective product.

27       4.      This Class Action is brought on behalf of all persons who have suffered damage

28   caused by a Toilet Connector with Defendants' defective plastic coupling, as well as those

1    persons who remain exposed to the risk of damage by virtue of having a Toilet Connector with a

2    defective plastic coupling in their home or building.

3        5.      Plaintiffs and the Classes have suffered, and will continue to suffer, injury-in-fact

4    and lose money as a direct result of Defendants' conduct in that each has expended money to

5    repair property damage caused by the defective Toilet Connector, and have and will be caused to

6    expend money to replace the defective Toilet Connectors. As a result, Plaintiffs and the Classes

7    are entitled to damages and declaratory and/or equitable relief as appropriate.

8                                    **JURISDICTION**

9        6.      This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), as

10    the matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, and

11    the sum of the amount in controversy exceeds $5,000,000. The requirement of minimal diversity

12    is met as the dispute is between citizens of California and at least one Defendant from a different

13    state. *See* 28 U.S.C. § 1332(d)(2)(A).

14        7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one of

15    the named Plaintiffs resides in this District (Alameda, California) and some of the putative Class

16    members also reside in this District. The causes of action for the putative Class members also

17    arose, in part, in California and the Defendants regularly transact business within this District

18    and California.

19        8.      As a result of the Defendants designing, manufacturing, marketing, distributing,

20    promoting and/or selling, either directly or indirectly through third parties or related entities, the

21    defective Toilet Connectors from the State of California and to California residents, the

22    Defendants obtained the benefits of the laws of California and derived a profit from California

23    commerce.

24                                    **PARTIES**

25    **Plaintiffs:**

26        9.      Plaintiff Jason Trabakoolas is an adult citizen and resident of the State of

27    California, who resides in Auburn. In approximately 2008, Plaintiff Trabakoolas installed a

28    Toilet Connector in his home with a Watts Anderson-Barrows plastic coupling nut. The base of

the plastic coupling is marked with an "AB." Upon information and belief, Defendant Watts

CLASS ACTION COMPLAINT            2

1   Anderson-Barrows designed, manufactured, and assembled this plastic coupling nut at its facility
2   located at 2800 Watts Avenue, Palmdale, California. The Toilet Connector's label did not
3   provide any warnings regarding the possibility of spontaneous failure; did not instruct Plaintiff to
4   conduct regular inspections or replace the Toilet Connector after a certain period of time; and did
5   not contain any warranty information.

6       10.     Plaintiff Trabakoolas would not have purchased the Toilet Connectors and/or had
7   them installed and/or otherwise exposed his real and personal property to catastrophic flooding
8   had Defendants disclosed the propensity for their Toilet Connectors to spontaneously fail.

9       11.     On July 19, 2011, after returning from a weekend vacation, Plaintiff Trabakoolas
10  arrived home to discover that Defendants' Toilet Connector failed causing water to flood his
11  home. The coupling failure caused water to spray with such force, and for such duration, that a
12  hole was created in the drywall next to the toilet. The baseboards separated from the walls and
13  the kitchen cabinets were warped from the extensive water damage. As a result of the failure,
14  and in addition to the damage to his property, Plaintiff suffered both incidental and consequential
15  damages. Had Plaintiff known that the Toilet Connector in his home was susceptible to
16  spontaneous failure and had a limited useful life, he would have regularly inspected and replaced
17  it to avoid any damages.

18      12.     Plaintiff Trabakoolas' Watts Anderson-Barrows fractured plastic coupling is
19  pictured below:

20
21
22
23                          
24
25
26
27
28

1      13.    Plaintiff Sheila Stetson is an adult citizen and resident of the State of California,

2  who resides in Alameda. In June 2003, Plaintiff Stetson had a Wolverine Brass 12" Stainless

3  Steel Toilet Connector Line with a Watts Anderson-Barrows plastic coupling installed in her

4  home. The base of the plastic coupling is marked with an "AB." Upon information and belief,

5  Defendant Watts Anderson-Barrows designed, manufactured, and assembled this plastic

6  coupling nut at its facility located at 2800 Watts Avenue, Palmdale, California. The Toilet

7  Connector's label included the installation instruction: "HAND TIGHTEN – PLUS ¼ TURN

8  WITH WRENCH." The label did not provide any warnings regarding the possibility of

9  spontaneous failure; did not instruct Plaintiff to conduct regular inspections or replace the Toilet

10  Connector after a certain period of time; and did not contain any warranty information.

11      14.    Plaintiff Stetson would not have purchased the Toilet Connectors and/or had them

12  installed and/or otherwise exposed her real and personal property to catastrophic flooding had

13  Defendants disclosed the propensity for their Toilet Connectors to spontaneously fail.

14      15.    On August 20, 2011, Defendants' Toilet Connector failed causing water to flood

15  Plaintiff Stetson's home. The extensive water damage to Plaintiff Stetson's home caused by the

16  fractured coupling required the replacement of approximately thirty feet of drywall in the two

17  rooms adjacent to the bathroom, together with the replacement of flooring in four other rooms.

18  As a result of the failure, and in addition to the damage to her property, Plaintiff suffered both

19  incidental and consequential damages. Had Plaintiff known that the Toilet Connector in her

20  home was susceptible to spontaneous failure and had a limited useful life, she would have

21  regularly inspected and replaced it to avoid any damages.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

16.     Plaintiff Stetson's Watts Anderson-Barrows fractured plastic coupling is pictured below:



**Defendants**:

17.     Defendant Watts Water is incorporated in the State of Delaware with its principal place of business located at 815 Chestnut Street, North Andover, Massachusetts. At all relevant times, Defendant designed, manufactured, assembled, labeled, marketed, distributed, and sold the defective Toilet Connectors throughout the United States.

18.     Defendant Watts Regulator is located at 815 Chestnut Street, North Andover, Massachusetts. At all relevant times, Defendant designed, manufactured, assembled, labeled, marketed, distributed, and sold the defective Toilet Connectors throughout the United States.

19.     Defendant Watts Anderson-Barrows is a wholly-owned-subsidiary of Watts Water located at 2800 Watts Avenue, Palmdale, California. In December 2007, Anderson-Barrows merged into Watts Regulator. At all relevant times, Defendant Watts Anderson-Barrows designed, manufactured, assembled, labeled, marketed, distributed, and sold the defective Toilet Connectors from its headquarters in Palmdale, California throughout the United States.

20.     Defendant Watts Taizho is a Chinese Corporation with its principal place of business in Zhejiang Province, China and is a wholly owned subsidiary of Watts Water located at 815 Chestnut Street, North Andover, Massachusetts 01845. Upon information and belief, Watts

CLASS ACTION COMPLAINT             5

1  | Taizho manufactures the defective plastic coupling nut affixed to the Toilet Connectors sold in
2  | the United Sates.

3  |     21.     Defendant Savard is a wholly-owned subsidiary of Watts Water with its principal
4  | place of business located at 815 Chestnut Street, North Andover, Massachusetts. Watts Water
5  | acquired the water connector business of the Donald E. Savard Company in an asset purchase
6  | transaction in July 2005. At all relevant times, Defendant Savard designed, manufactured,
7  | assembled, labeled, marketed, distributed, and sold the defective Toilet Connectors throughout
8  | the United States.

9  |     22.     Defendant Wolverine Brass is incorporated and existing under the laws of the
10 | State of South Carolina with its principal place of business located at 2951 E. Highway 501,
11 | Conway, South Carolina. At all times material hereto, Wolverine Brass sold and distributed
12 | Toilet Connectors with defective coupling nuts manufactured by Watts Anderson-Barrows.

13 |     23.     Defendant John Does 1-100 are those Defendants, only known to Defendant
14 | Watts Water, who sold and distributed Toilet Connectors with the defective coupling nuts that
15 | were designed, manufactured, assembled, labeled, and tested by Defendant Watts Anderson-
16 | Barrows.

17 |

### FACTUAL ALLEGATIONS

18 |     24.     The Defendants designed, manufactured, assembled, tested, labeled and offered
19 | for distribution and/or sale defective Toilet Connectors with the specific intention and purpose
20 | that these defective Toilet Connectors be installed by builders, plumbers, and consumers alike in
21 | homes, commercial properties, and other dwellings throughout the State of California and the
22 | United States. In so doing, Defendants represented that the Toilet Connectors were safe, of
23 | merchantable quality, and fit for their intended and reasonably foreseeable uses.

24 |     25.     As detailed below, however, Defendants knowingly failed to publicly disclose
25 | that their Toilet Connectors were defective, unsafe and posed a substantial risk of failure
26 | resulting in catastrophic water damage to property.

27 |     26.     A Toilet Connector as designed, manufactured, assembled, tested, labeled,
28 | marketed, distributed and/or sold by Defendants connects a water fixture shut-off valve to a

1   toilet. Prior to the introduction of these Toilet Connectors, the connection between a water shut-
2   off valve and a toilet had required a hard pipe connection. A section of rigid metal tubing would
3   be cut to the appropriate length with metal coupling assemblies on both ends of the tubing to
4   connect the property's water shut-off valve to the toilet.

5       27.     Toilet Connectors eliminated the need for the customized cut and fastened rigid
6   metal tubing between the shut-off valve and toilet. Toilet Connectors were manufactured in a
7   variety of lengths (12" – 20") and made available for sale, at large, to builders, plumbers, and
8   consumers through home do-it-yourself centers such as Home Depot, ACE Hardware, or Lowes
9   retailing anywhere from $3 to $7.

10      28.     Initially, when first introduced to the market, the coupling assemblies on both
11  ends of the Toilet Connector were made of metal. The metal couplings connected to both the
12  water shut-off valve and the toilet. These metal nuts were not susceptible to fracture.

13      29.     Due to the cost associated with the materials for, and manufacture of, the metal
14  nut, however, sometime in the late 1990s, early 2000s, Defendants replaced the toilet attachment
15  end with a cheaper plastic coupling nut. Originally, the plastic coupling was manufactured in the
16  United States. Later, Defendants moved their production facilities to China.

17      30.     A standard 20" Watts Toilet Connector with a plastic coupling nut for connection
18  to the toilet and metal nut for connection to the water shut-off valve (model: LBLK SPCT20-
19  614CP / UPC code: 4864305200)[1] is pictured below:



[1] The Toilet Connector pictured was purchased at The Home Depot in Fairless Hills,
Pennsylvanie on February 6, 2012 for $6.97, plus tax.

CLASS ACTION COMPLAINT              7

1        31.     The instruction for installation on this Watts Toilet Connector's label is "Hand

2    tighten + ¼ turn." The label does not contain any warnings about over tightening or stressing the

3    plastic coupling nut; does not warn against the use of a hand tool or provide specific instruction

4    on how the installer is to accomplish the additional ¼ turn of the plastic coupling absent the use

5    of a tool; does not advise about the nut's propensity to fracture; does not alert the property owner

6    to inspect the nut for cracking; and does not contain any warranty or information related to its

7    useful life.

8        32.     Almost immediately after Defendants introduced the plastic coupling nut, and at

9    least by 2003, Defendants faced mounting property damage claims related to the spontaneous

10   failure of the Toilet Connector. Repeatedly, the Toilet Connector's plastic coupling would suffer

11   a circumferential fracture at its base—just as with the named Plaintiffs' couplings depicted in the

12   pictures above—causing catastrophic flood and water damage to property.

13       33.     These repeated, spontaneous circumferential fractures were the direct result of

14   Defendants' defective design, manufacture, assembly, and labeling of the Toilet Connector.

15   Indeed, the Toilet Connector's plastic coupling failed to adhere to the most basic design

16   standards in the plastics industry.

17       34.     When using plastics to manufacture and design parts, the plastics industry

18   recognizes that a proper design strategy will include, at minimum: (a) a concern for safety and

19   performance; (b) appropriate material selection and a mold design optimized for the chosen

20   material to achieve the functional design goal; (c) maximum functionality; and (d) optimum

21   material usage.

22       35.     Defendants failed to adhere to these minimum industry requirements in designing,

23   manufacturing, assembling, testing and labeling the Toilet Connector's plastic coupling as the

24   plastic coupling is defective in at least the following respects: (a) the material choice of a low-

25   grade plastic that is "notch sensitive" and susceptible to failure due to stress concentrations

26   resident in the design; (b) the radius of the plastic nut's base is inadequate; (c) the angle of the

27   sidewall at the intersection with the base of the nut is too sharp and when affixed to the toilet's

28   base during routine installation increases the likelihood of fracture; (d) the wall thickness of the

CLASS ACTION COMPLAINT            8

1  coupling nut is inadequate, such that normal assembly torque can cause the nut to "craze"[2] which

2  can concentrate local stresses, leading to total failure; and (e) the Toilet Connectors' packaging

3  and label fails to provide the installer with adequate instruction for proper, safe installation,

4  together with warnings against over-stressing the nut, repeated inspection, useful life and

5  warranty details.

6  **Material Selection / Notch Sensitivity**

7      36.    Defendants selected a low-grade polyacetal for the coupling's material, which is a

8  notch sensitive polymer and often shows significant porosity.

9      37.    In using this plastic, Defendants' design, manufacture, testing and assembly failed

10  to properly account for its notch sensitivity. Notch sensitivity is commonly understood to mean

11  the extent to which the sensitivity of a material to fracture is increased by the presence of an

12  inhomogeneity such as a notch, a sudden change in section, a crack, scratch or void within the

13  wall section.

14      38.    Each plastic coupling has threading cut into its sidewall that allows the nut to

15  affix to the toilet's base. At the coupling nut's base, the threaded sidewall transitions to the nut's

16  base. The threading, however, abruptly ends at the transition point from the nut's base to

17  sidewall creating a notch.

18      39.    This notch, created by the threads terminating abruptly at the base of the coupling

19  nut, causes high local stresses at the transition point that can initiate crazing within the plastic

20  that ultimately leads to fracturing.

21      40.    Indeed, the plastic industry has warned against such abrupt transition points

22  stating that "a thread should not be ended abruptly at the base of the part so as to form a sharp

23  notch, as this may contribute to increased stress concentration." Ticona, A business of Celanese

24  AG, "*Designing with Celcon polyacetal copolymer*" (2002).

25      41.    This design and/or manufacture defect, which extends the thread all the way to the

26  bottom of the coupling nut, also concentrates stress at the lowest thread inside the nut. As a

27  result, the coupling nut's wall thickness can not withstand the stress associated with its routine

28

---

[2]  Craze or crazing refers to a series of tiny, hairline cracks in the surface of the plastic, which weakens plastic.

1 | installation ultimately causing a fracture.

2 | **Improper Corner Radius and Wall Thickness**

3 |     42.    Additionally, as widely recognized by the plastic industry, when designing with
4 | plastic, sharp corners are to be avoided. Sharp corners are the number one cause of plastic part
5 | failure because they produce localized stress or stress concentration. Instead, when molding
6 | plastics, corners should be rounded to reduce stress.



15 |     43.    As early as 1988, GE Plastics in a published design guide warned manufacturers
16 | that, "the presence of sharp corners is perhaps the greatest single cause of part failure.
17 | Minimizing sharp corners reduces stress concentration and results in parts with greater structural
18 | strength. Because [plastic] resins are notch sensitive materials, fillets and radii should be
19 | included at all internal corners to reduce the effect of stress concentration." GE Plastics,
20 | VALOX Resin Design Guide (June 1988).

21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

CLASS ACTION COMPLAINT        10

44. Defendants' plastic coupling design and/or manufacture, however, disregarded this common industry knowledge, and instead of a generous radius or fillet at the coupling's base, Defendants used a sharp corner that concentrated all stress at the coupling's base, as shown below:



Sharp corner produced by sidewall and base transition leaving high localized stress.

45. The defect associated with the sharp corner and improper radius is exacerbated by the coupling's inadequate wall thickness.

46. Despite extensive instruction to the contrary from the plastics industry, and its knowledge that thousands of coupling nut failures were being reported each year, Defendants continued to manufacture the coupling nut with threads that ended abruptly and placed a high stress concentration on the coupling's base. Defendants also continued to manufacture the coupling nut with a sharp cornered transition point, and without a generous fillet or radius. This defective design, manufacture, and assembly caused the coupling nut to fracture in near uniform fashion resulting in catastrophic property damage.

**Inadequate Labeling and Warnings**

47. Knowing the sensitivities associated with the plastic coupling and its propensity to fail, Defendants had a duty to provide detailed instructions for its installation, together with warnings for repeated inspection and the possibility of failure.

48. Initially, when Defendants introduced the plastic coupling nut, the Toilet Connector's label contained only the installation instruction: "HAND TIGHTEN – PLUS ¼ TURN WITH WRENCH."

CLASS ACTION COMPLAINT                   11

1    49.    After thousands of failures, Defendants recognized that the use of a wrench could
2  strip the plastic coupling's interior threading causing a fracture and failure. Defendants then
3  changed the Toilet Connector's label to state only: "HAND TIGHTEN + ¼ TURN" seemingly
4  eliminating the use of the wrench as part of the installation process.

5    50.    However, the instruction to add a quarter turn after the coupling has been hand
6  tightened is both vague and ambiguous. In other words, it is unclear how Defendants anticipated
7  the installer would accomplish the additional quarter turn beyond hand tightening without a
8  wrench or other hand tool.

9    51.    Moreover, the use of "HAND TIGHTEN" provides no actual instruction on how
10  much torque can safely be applied to the coupling nut without over-stressing the parts. This
11  vague instruction requires that the installer guess as to how much torque is "just enough" to hold
12  the nut in place so that it will not leak, but not over-tightened so that it will not fracture.

13    52.    The Toilet Connector's label also fails to identify the risks and hazards associated
14  with over tightening the coupling nut. The label does not warn about: the specific nature of the
15  risks (i.e., spontaneous fracture), gravity of the risks (i.e., flooding) and how to avoid those risks
16  (i.e., repeated inspection and replacement after a reasonable useful life).

17    53.    Without proper instruction or warning about spontaneous fracture, Plaintiffs and
18  the Class members were left on their own to determine whether the plastic nut was properly
19  affixed to the toilet; and if, or when it should be inspected and replaced while affixed to a toilet,
20  which has an average life expectancy of 10-15 years.

21    54.    The reasonable expectation of the consumer is that the life expectancy of a
22  properly designed and manufactured Toilet Connector will equal or surpass that of the toilet,
23  unless informed or warned otherwise by Defendants.

24  **Defendants Secretly Change the Toilet Connector Design**

25    55.    With repeated claims of property damage stemming from the coupling nut's
26  failure, Defendants had exclusive knowledge of material facts regarding its defective Toilet
27  Connectors that were not known to, and indeed, actively concealed from Plaintiffs and the
28  Classes.

CLASS ACTION COMPLAINT          12

1      56.     Despite their knowledge, Defendants never provided any public warnings about

2  the risk of the Toilet Connector's failure. Defendants also never instituted a recall to inspect,

3  repair, or replace the knowingly defective Toilet Connectors. Accordingly, homes and buildings

4  throughout California and the United States are exposed to, and suffer, catastrophic water

5  damage due to the failure of Defendants' defective Toilet Connectors.

6      57.     Instead, Defendants secretly took to re-designing the Toilet Connector and began

7  to market and sell a new, reinforced Toilet Connector.

8      58.     Defendants' re-designed Toilet Connector replaced the defective coupling nut's

9  low-grade plastic with a stronger plastic and increased the nut's wall thickness.

10     59.     To remediate the coupling nut's notch sensitivity, Defendants eliminated the last

11  two thread cuts in the coupling nuts sidewall. Now, instead of ending the threads abruptly, the

12  threads transition gradually, to reinforce the coupling nut to withstand the high stress

13  concentration. The redesigned nut also has a generous radius at the transition from the sidewall

14  to the base thereby reducing the stress concentration at the previous fracture site.

15     60.     After Defendants remediated the initial defects, during 2008, Defendant Watts

16  introduced its "FloodSafe Auto-Shutoff Connectors" to the market, which Watts claimed would

17  "Prevent CATASTROPHIC Water Damage!"

18     61.     The FloodSafe media packet, directed not at consumers but rather Watt's

19  distributors, generally acknowledged that "water supply hoses are vulnerable to a number of

20  potential problems" and that "[p]oorly manufactured hoses can break under normal pressure

21  conditions . . . ."

22     62.     Watts touted the new FloodSafe connector would "protect against catastrophic

23  water damage caused by . . . broken or ruptured water supply hoses and fittings."

24     63.     Watts specifically extolled the FloodSafe's improved plastic coupling fitting,

25  which added "ears" to make it easier to install and tighten.

26     64.     The addition of the "ears" also prevents the installer from using a wrench, or other

27  hand tool, to install the plastic coupling thereby eliminating the threat of stripping the coupling's

28  interior threading.

CLASS ACTION COMPLAINT       13

65.    Unlike the defective Toilet Connectors, the FloodSafe connectors' label includes detailed instructions for installation. The label specifically instructs to "hand tighten only" the plastic nut and warns not to over tighten.

66.    The FloodSafe label advises the property owner in large type font that: "THIS PART IS TO BE INSPECTED AFTER INSTALLATION AND EVERY SIX MONTHS THEREAFTER. REPLACE IF LEAKING."

67.    The remediated FloodSafe coupling nut (model FST12 / UPC Code: 9826831972) with proper threading, increased wall thickness, molded corners, generous radius at the transition from the sidewall, and appropriate labeling is pictured below:

 

68.    Plainly, Defendants recognized—internally— that the earlier versions of their Toilet Connectors were defective in their design, manufacture, and labeling. Defendants remediated each defect as part of its FloodSafe design, however, never informed property owners that the earlier design could still spontaneously fail causing flooding and that it should be routinely inspected and replaced.

69.    Moreover, despite their knowledge of these latent defects, Defendants continue to manufacture, distribute, and sell these defective Toilet Connectors throughout California and nationwide. As noted earlier, as recently as February 2012, Defendants' defective Toilet Connectors were found stocked on the shelves of a Pennsylvania Home Depot. (*See* n.1.)

1    70.    Thus, at all times material hereto, and prior to the Plaintiffs named herein

2    suffering any damage, Defendants knew that: (a) the risk of the Toilet Connector's plastic

3    coupling nut's failure was substantial; (b) Plaintiffs and the Class members were unaware of the

4    substantial risk that the Toilet Connectors plastic coupling nut would fail; (c) Plaintiffs and the

5    Classes had a reasonable expectation that Defendants would disclose the risk and cure the latent

6    defect; and (d) Plaintiffs and the Classes were unaware that their Toilet Connectors should be

7    inspected and replaced periodically or that they had a limited useful life.

8    **Plaintiffs and the Classes Have Been Damaged**

9    71.    Plaintiffs and the Class members have suffered actual harm as a result of

10   Defendants' actions because the Toilet Connectors in their homes contain a material design

11   and/or manufacture defect that weakened and caused fractures of the plastic coupling nut which

12   resulted in water leaks and property damage.

13   72.    Plaintiffs and the Classes had a reasonable expectation that the service life of the

14   Toilet Connectors was at least 10–15 years, which would equate to the same useful life as the

15   plumbing component (i.e., toilet) to which it was affixed. The Toilet Connector defects,

16   however, caused the Toilet Connectors owned by Plaintiffs and the Classes to experience

17   premature failure that is entirely disproportionate to the age of toilet systems.

18   73.    The injuries sustained by Plaintiffs and the Classes flow from the common

19   nucleus of operative facts surrounding Defendants' misconduct, including: (1) that the Toilet

20   Connector had a defect that leads to spontaneous fracture of the plastic coupling; (2) that the

21   Toilet Connectors were defective for their intended use; (3) Defendants did not provide adequate

22   instruction for installation or warnings urging periodic inspection and replacement; and (4) that

23   Defendants, despite knowing about the Toilet Connectors' defects, failed to provide any public

24   notice or warning about the defective coupling nut design or institute a recall to inspect, repair,

25   or replace the defective Toilet Connectors.

26   74.    The damages suffered by Plaintiffs and the Classes include, without limitation,

27   amounts paid to remediate property damage caused by flooding, together with the cost to replace

28   the defective Toilet Connectors, as well as incidental and consequential damages.

CLASS ACTION COMPLAINT            15

1    **Active Concealment / Equitable Tolling**

2        75.    The defective coupling nuts in the Toilet Connectors are not perceptible to

3    Plaintiffs or other Class members until the coupling nut ultimately fractures and causes water

4    leaks and property damage. Even after water begins leaking into the property, homeowners

5    cannot determine the nature of the defect without expert assistance.

6        76.    Because of the facts alleged in the preceding paragraphs, Plaintiffs and Class

7    members did not become aware of the defects with the Toilet Connectors until they suffered

8    damages from its failure.

9        77.    In addition, Defendants are estopped to plead the statute of limitations because

10   Defendants failed to disclose facts they were obligated to disclose concerning defects in the

11   Toilet Connectors, actively concealed and misrepresented to Plaintiffs and the Classes facts

12   which were essential to understanding that Plaintiffs and the Classes had claims against

13   Defendants and otherwise acted so as to prevent Plaintiffs and the Classes from learning that

14   they possessed claims against Defendants. Had Plaintiffs and the Classes been aware of the facts

15   which Defendants misrepresented and concealed, they would have commenced suit against

16   Defendants before the running of any statute of limitations alleged to be applicable to this case.

17                                **CLASS ACTION ALLEGATIONS**

18       78.    Plaintiffs bring all their claims as class claims pursuant to Fed. R. Civ. P. 23. The

19   requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are met with respect to the Classes

20   defined below.

21       79.    The first proposed Rule 23(b)(3) "Damages Class" is defined as follows:

22           All persons in the United States who reside in a structure that

23           contained a Toilet Connector with Defendants' defective plastic
             coupling nut that failed and caused damage to property. Excluded
24           from the Class are: Defendants, any entities in which Defendants
             have a controlling interest, any of Defendants parents, subsidiaries,
25           affiliates, officers, directors, employees and members of such
             persons immediate families, and the presiding judge(s) in this case
26           and his, her or their immediate family.

27

28

CLASS ACTION COMPLAINT            16

80.     In the alternative, Plaintiffs propose a Rule 23(b)(3) "California Damages Class" defined as follows:

> All persons in the state of California that reside in a structure that contained a Toilet Connector with Defendants' defective plastic coupling nut that failed and caused damage to property. Excluded from the Class are: Defendants, any entities in which Defendants have a controlling interest, any of Defendants parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her or their immediate family.

81.     In addition to the Damages Classes under Rule 23(b)(3), Defendants' failure to warn, properly label, and notify Plaintiffs and the putative Classes about the remediation to the defective Toilet Connector, also makes declaratory and equitable relief with respect to a Rule 23(b)(2) class appropriate.

82.     The "Declaratory Relief Class" is defined as follows:

> All persons in the United States that reside in a structure that contains a Toilet Connector with Defendants' defective plastic coupling nut. Excluded from the Class are: Defendants, any entities in which Defendants have a controlling interest, any of Defendants parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her or their immediate family.

83.     Numerosity: Plaintiffs are informed and believe that Defendants sold hundreds of thousands of defective Toilet Connectors throughout the United States and California during the Class Period. Additionally, Plaintiffs believe, and therefore aver, that Defendants' Toilet Connectors have failed thousands of times throughout the United States, and in California, resulting in significant property damage. Accordingly, the Classes consist of hundreds, if not thousands of persons, making individual joinder of all the Class members impracticable. The Classes can be readily identified using warranty and insurance claim records, and other information kept by Defendants or third parties in the usual course of business and presently within their control. Defendants' Toilet Connectors can be identified by unique markings on the Toilet Connector itself, together with the labeling affixed to each connector.

CLASS ACTION COMPLAINT          17

84.    The Classes expressly disclaim any recovery for physical injury caused by a Toilet Connector's coupling nut failure.

85.    Commonality: Questions of law and fact are common to the Plaintiffs, the Damages Classes, and Declaratory Relief Class, and predominate over questions affecting only individual members, including, *inter alia*, the following:

(a)    Whether the Defendants negligently designed the Toilet Connectors;

(b)    Whether the Toilet Connectors are defective in their design, manufacture, assembly, and testing;

(c)    Whether the Toilet Connector label provides adequate instruction for its installation, inspection, replacement, useful life, and adequate warnings regarding its propensity to fail;

(d)    Whether Defendants owed Plaintiffs and the Classes a duty to warn about the Toilet Connectors' defects;

(e)    Whether Defendants remediated the design of the defective Toilet Connector without notifying Plaintiffs and the Class members;

(f)    Whether Defendants continued to sell the defective Toilet Connector after remediating its design;

(g)    Whether Plaintiffs and the members of the Damages Classes are entitled to damages; and

(h)    Whether Defendants violated California law, including California's Unfair Competition Act entitling Plaintiffs and the Classes to declaratory and equitable relief.

86.    Typicality: Plaintiffs' claims are typical of the claims of the Class members as described above, and arise from the same course of conduct by Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

87.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of all absent Class members. Plaintiffs are represented by counsel competent and experienced in consumer protection, products liability, and class action litigation.

88.    The Prerequisites of Rule 23(b)(2) are Satisfied for a Declaratory Relief Class: The prerequisites to maintaining a class action for declaratory and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants have acted or refused to act on grounds generally

CLASS ACTION COMPLAINT                    18

1  applicable to the Class thereby making appropriate declaratory and equitable relief with respect
2  to the Class as a whole.

3      89.    The Prerequisites of Rule 23(b)(3), Predominance and Superiority, are Satisfied
4  for a Damages Class:  Plaintiffs and the Class have all suffered damages as a result of the
5  Defendants' defective Toilet Connector's plastic coupling nut.  A class action is superior to other
6  available methods for the fair and efficient adjudication of the controversy.  Class treatment of
7  common questions of law and fact is superior to multiple individual actions or piecemeal
8  litigation.  Moreover, absent a class action, most Class members would likely find the cost of
9  litigating their claims prohibitively high and would therefore have no effective remedy at law.

10     90.    The prosecution of separate actions by the individual Class members would create
11  a risk of inconsistent or varying adjudications with respect to individual Class members, which
12  would establish incompatible standards of conduct for Defendants.  In contrast, the conduct of
13  this action as a class action presents far fewer management difficulties, conserves judicial
14  resources and the parties' resources, and protects the rights of each Class member.

15     91.    Defendants' actions are generally applicable to the Classes as a whole, and
16  Plaintiffs seek, *inter alia*, equitable remedies on behalf of a (b)(2) class and damages on behalf of
17  (b)(3) classes.

18                          **CAUSES OF ACTION**

19                      **FIRST CAUSE OF ACTION**
20                           **Negligence**

21     92.    Each of the preceding paragraphs is incorporated by reference as though fully set
22  forth herein.

23     93.    Defendants were negligent in that they failed to use reasonable care when they
24  designed, created, manufactured, assembled, labeled, tested, distributed and sold their Toilet
25  Connectors with plastic coupling nuts.

26     94.    As the manufacturer and/or seller of a consumer product, Defendants owed a duty
27  to Plaintiffs and the putative Class members to provide a safe and quality product, and a duty to
28  provide a product that would perform as it was intended and expected.  Defendants also owed a

CLASS ACTION COMPLAINT          19

duty to Plaintiffs and the putative Classes to provide adequate instructions and warnings for proper and safe use of the product. Defendants further owed a duty to provide Plaintiffs and the putative Classes with information related to Toilet Connectors reasonable expected life and information related to its maintenance and replacement.

95.     Defendants breached each one of these duties.

96.     As a direct and proximate result of Defendants' negligence, lack of care, and other wrongful acts, Plaintiffs and the putative Class members sustained damages.

97.     As a result of Defendants' negligence, Plaintiffs and the putative Classes have suffered actual damages in the amounts they have paid to remediate property damage caused from flooding water, together with consequential and incidental damages.

98.     That as a direct, proximate and foreseeable result of Defendants' negligence, Plaintiffs and the putative Class members have been damaged in the aggregate, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Strict Liability-Design Defect/Manufacturing Defect and Failure to Warn**

99.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

100.    Defendants designed, manufactured, sold and/or distributed defective Toilet Connectors with plastic coupling nuts to Plaintiffs and the putative Classes.

101.    The Toilet Connectors that Defendants designed, manufactured, sold and/or distributed were defective in design and/or manufacturing. Further, the Toilet Connectors were defective when they left Defendants' control.

102.    Defendants knew, or should have known, that the Toilet Connectors contained a non-obvious danger in their material. Defendants knew that the plastic coupling nut was highly susceptible to failure, may be damaged during installation, and that consumers would not repeatedly inspect and/or replace their Toilet Connectors without an instruction to do so.

103.    Defendants knew that Plaintiffs and the Classes would use the Toilet Connectors without first inspecting their durability. Defendants failed to inform Plaintiffs and the members

of the Classes as to the Toilet Connectors susceptibility to failure and warn them to conduct repeated inspections and to replace the Toilet Connectors periodically.

104.    The Toilet Connectors designed, manufactured, sold and/or distributed by Defendants were defective due to inadequate warnings and inadequate inspection and testing, and inadequate reporting regarding the results of quality-control testing and safety inspections, or lack thereof.

105.    Had Plaintiffs and the members of the Classes been adequately warned about the likelihood that Defendants' Toilet Connectors would fail, they would have taken steps to avoid damages, including inspecting and replacing the Toilet Connector.

106.    As a direct and proximate result of the defective condition of the Toilet Connector as designed, manufactured, sold and/or distributed by Defendants, Plaintiffs and other members of the Classes have been injured, including catastrophic water damage to their property.

## THIRD CAUSE OF ACTION
### Negligent Failure to Warn

107.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

108.    Defendants designed, manufactured, assembler, sold and/or distributed defective Toilet Connectors to Plaintiffs and the Classes.

109.    Defendants knew or reasonably should have known that their Toilet Connectors were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner.

110.    Defendants knew or reasonably should have known that Plaintiffs and the Classes would not realize that the Toilet Connectors were defective and posed a danger of causing substantial property damage.

111.    Defendants failed to adequately warn of the danger or instruct Plaintiffs and the Classes on the safe use of the product.

112.    A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the

CLASS ACTION COMPLAINT            21

1   product, including but not limited to, providing detailed installation instructions together with

2   warnings to frequently inspect the Toilet Connector.

3       113.    As a direct and proximate result of the defective condition of the Toilet Connector

4   as designed, manufactured, sold, assembled, and/or distributed by Defendants, Plaintiffs and

5   other members of the Classes have been injured, including by catastrophic water damage to their

6   homes resulting, together with incidental and consequential damages.

7       114.    Defendants' failure to warn or instruct Plaintiffs and the Classes was a substantial

8   factor in causing their harm.

9                               **FOURTH CAUSE OF ACTION**
                 **Violation of the Song-Beverly Consumer Warranty Act for**
10              **Breach of Implied Warranty (Cal. Civ. Code § 1792 *et seq*.)**
                       **On Behalf of California Residents Only**
11

12      115.    Each of the preceding paragraphs is incorporated by reference as though fully set

13  forth herein.

14      116.    Plaintiffs assert a claim for violations of California's Song-Beverly Consumer

15  Warranty Act, Cal. Civ. Code §§ 1792 *et seq*., on behalf of themselves and the Class members.

16      117.    The defective Toilet Connectors at issue are "consumer goods" within the

17  meaning of Cal. Civ. Code § 1791(a).

18      118.    Defendants are a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

19      119.    Plaintiffs and the Class are the ultimate consumers and intended end-users of the

20  Toilet Connectors.

21      120.    Under the Song-Beverly Act, Civ. Code, § 1790 *et seq*., every retail sale of

22  consumer goods sold in California includes an implied warranty by the manufacturer and the

23  retail seller that the goods are merchantable unless the goods are expressly sold as is or with all

24  faults. Civ. Code, §§ 1791.3, 1792.

25      121.    Merchantability, for purposes of the Song-Beverly Act, means that the consumer

26  goods: (1) Pass without objection in the trade under the contract description; (2) Are fit for the

27  ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and

28

CLASS ACTION COMPLAINT            22

1  labeled; and (4) Conform to the promises or affirmations of fact made on the container or label.

2  Civ. Code, § 1791.1.

3      122.    By operation of law, Defendants impliedly warranted to Plaintiffs and Class

4  members that the Toilet Connectors were of merchantable quality, adequately contained,

5  packaged, and labeled, and fit for the ordinary purposes for which the Toilet Connectors were

6  intended to be used.

7      123.    Defendants knew or had reason to know at the time of sale that the Toilet

8  Connectors were required for a particular purpose (supplying and containing water for a toilet),

9  and that Plaintiff and Class members were relying on Defendants' skill or judgment to select or

10 furnish such goods.

11     124.    Plaintiffs and the members of the Class also believed that if they were required to

12 conduct routine inspection or replace Defendants' Toilet Connector after a certain period of time

13 that the label or packaging for the Toilet Connector would have instructed them to do so.

14     125.    Defendants breached their implied warranties when they failed to adequately label

15 and package the Toilet Connectors with the necessary instructions related to inspection,

16 replacement of the Toilet Connectors, and useful life of the Toilet Connectors.

17     126.    The latent design defects and the defects associated with labeling and packaging

18 were not discoverable by Plaintiff and the Class at the time of purchase. Indeed, Defendants

19 failed to provide any warranty information to Plaintiffs and the Class either at the point of sale,

20 on the label or packaging. Plaintiffs and the Class had no way to determine the useful life of the

21 Toilet Connectors or any applicable warranty period.

22     127.    As a direct and proximate result of Defendants' breach of the implied warranty,

23 Plaintiff and the Class members have incurred damages to their property, together with the costs

24 incurred to purchase the defective Toilet Connector and to subsequently replace it after it failed.

25                              **FIFTH CAUSE OF ACTION**
                    **Violation of the California Consumers Legal Remedies Act**
26                              **(Cal. Civ. Code § 1750 _et seq._)**

27     128.    Each of the preceding paragraphs is incorporated by reference as though fully set

28 forth herein.

1    129.    Plaintiffs and the Class members are consumers who purchased Defendants'
2  Toilet Connectors for personal, family, or household purposes.

3    130.    Plaintiffs were all reasonable consumers; in that, in acting reasonably under the
4  circumstances, they were not versed in the art of inspecting and judging the design of
5  Defendants' Toilet Connector or in the process of its preparation or manufacture.

6    131.    By failing to disclose and concealing the Toilet Connector's defects, Defendants
7  violated Civil Code § 1770(a), as it represented that its Toilet Connectors had benefits and
8  characteristics which they do not have, and represented that its Toilet Connectors were of a
9  particular standard, quality or grade when the were of another.  CLRA, Cal. Civ. Code
10  §§ 1770(a)(5), (9), (14), and (17).

11   132.    Defendants' unfair or deceptive acts or practices occurred repeatedly in
12  Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing
13  public and imposed a serious risk of substantial property damage.

14   133.    Defendants knew that its Toilet Connectors were defectively designed or
15  manufactured, would fail prematurely, and were not suitable for their intended use.

16   134.    Defendants were under a duty to Plaintiffs and Class members to disclose the
17  defective nature of the Toilet Connectors because:

18           a) Defendants were in a superior position to know the true state of facts about the
19              design defect of the plastic coupling nut;

20           b) Plaintiffs and the Class members could not reasonably have been expected to
21              learn or discover that the Toilet Connectors and the plastic coupling nut had a
                design defect until the manifestation of the failure;

22           c) Defendants knew that Plaintiffs and the Classes could not reasonably have
23              been expected to learn or discover the defect and the associated damages that
                it causes; and

24           d) When the defect manifests itself it results in catastrophic water damage to
25              property.

26   135.    In failing to disclose the defective nature of the Toilet Connectors, Defendants
27  have knowingly and intentionally concealed material facts and breached their duty not to do so.
28

CLASS ACTION COMPLAINT                24

1    136.    Plaintiffs would not have purchased the Toilet Connectors and/or had them

2  installed and/or otherwise exposed their real and personal property to catastrophic flooding had

3  Defendants disclosed the propensity for their Toilet Connectors to spontaneously fail.

4    137.    As a direct and proximate result of Defendants' unfair or deceptive acts or

5  practices, Plaintiffs and the Class members have suffered actual damages in the amounts paid to

6  remediate property damage caused by the defective Toilet Connectors.

7    138.    Pursuant to Cal. Civ. Code § 1780(a)(2), (3) and (5), Plaintiffs and the Classes

8  seek an order for declaratory, equitable and/or injunctive relief prohibiting Defendants from

9  engaging in the methods, acts, or practices alleged herein and requiring Defendants to notify

10  consumers of the defective Toilet Connectors and that the Defendants remediated and changed

11  the design; and order Defendants to replace all of the defective Toilet Connectors previously

12  sold.

13    139.    Pursuant to Cal. Civ. Code § 1780(d), Plaintiffs and the Classes also seek

14  attorneys' fees and costs, and other relief this Court deems proper.

15                            **SIXTH CAUSE OF ACTION**
                  **Violation of California Unfair Competition Law**
16                      **(Cal Bus & Prof Code § 17200 *et seq.*)**
                  **On behalf of the Rule 23(b)(2) Declaratory Relief Class**
17

18    140.    Each of the preceding paragraphs is incorporated by reference as though fully set

19  forth herein.

20    141.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the other

21  Class members, against Defendants for their unlawful, unfair, fraudulent and/or deceptive

22  business acts and practices pursuant to California's Unfair Competition Law (UCL), Business &

23  Professions Code § 17200 *et seq.*, which prohibits unlawful, unfair and/or fraudulent business

24  acts and/or practices.

25    142.    This claim is predicated on the duty to refrain from unlawful, unfair and deceptive

26  business practices. Plaintiffs and the other Class members hereby seek to enforce a general

27  proscription of unfair business practices and the requirement to refrain from deceptive conduct.

28

CLASS ACTION COMPLAINT          25

143. The UCL § 17200 *et seq.* prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful...business acts or practices"; (b) "unfair fraudulent business acts or practices"; and (c) "unfair, deceptive or misleading advertising."

144. Defendants committed an *unlawful* business act or practice in violation of the UCL § 17200 *et seq.* when they violated the CLRA by failing to disclose material information about the Toilet Connectors defective plastic coupling nut. As early as 2003, if not earlier, Defendants knew that the plastic coupling's design, manufacture and assembly were defective. Defendants further knew that Plaintiffs and the Class could not learn or discover that the Toilet Connectors was defective until the manifestation of the failure. Defendants surreptitiously remediated the defect without warning consumers about the coupling's potential to spontaneously fail and cause extensive property damage due to flooding.

145. Defendants conduct likewise violates the "unfairness" prong of the UCL. According to the Federal Trade Commission guidelines: "To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." FTC Policy Statement On Unfairness, appended to *International Harvester Co.*, 104 F.T.C. 949, 1070 (1984).

146. As alleged in this complaint, Plaintiffs and the Class have suffered damages as a result of Defendants unfair conduct. Defendants' failure to disclose that the Toilet Connector's plastic coupling contained a defect that could lead to spontaneous fracture produced no countervailing benefits to consumers or competition that outweigh such substantial harm to Plaintiffs and the Class. Because the injuries alleged occurred without Plaintiffs' and the other Class members' knowledge or permission, Plaintiffs and the Class, *a fortiori*, could not have avoided such injuries. One cannot avoid something about which one is unaware. Accordingly, Defendants have violated the "unfairness" prong of the UCL.

147.    Plaintiffs would not have purchased the Toilet Connectors and/or had them installed and/or otherwise exposed their real and personal property to catastrophic flooding had Defendants disclosed the propensity for their Toilet Connectors to spontaneously fail.

148.    As a direct and proximate cause of Defendants' violation of the UCL, Plaintiffs and the Class have suffered an injury-in-fact in the form of damage to their property that otherwise would have been avoided had Defendants properly labeled the Toilet Connector, including adequate instructions for its installation, warnings regarding repeated inspection, and warranty and useful life information.

149.    Plaintiffs, on behalf of themselves and for all others similarly situated, demand judgment against Defendants and demand declaratory, equitable, and/or injunctive relief from Defendants' unfair conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against Defendants and in favor of Plaintiffs, and grant the following relief:

A.    Determine that this action may be maintained as a Class action with respect to the Classes identified herein; certify a class action pursuant to both Rule 23(b)(2) and (3) with respect to particular issues if appropriate; and designate and appoint the named Plaintiffs herein and their counsel to serve as Class Representatives and Class Counsel;

B.    Grant Plaintiffs and the Rule 23(b)(3) Class members awards of damages in such amount to be determined at trial or as provided by applicable law;

C.    Grant Plaintiffs and the Declaratory Relief Class members pursuant to Rule 23(b)(2) declaratory, equitable, and/or injunctive relief and require Defendants to stop the unlawful, unfair and deceptive conduct alleged herein and/or notify the Declaratory Relief Class members about the Toilet Connector defect at Defendants' expense, and to pay for replacements of all the defective Toilet Connectors;

D.    Grant the Plaintiffs and the Class members their costs of suit, including reasonable attorneys' fees, and expenses as provided by law; and

CLASS ACTION COMPLAINT                27

1        E.     Grant the Plaintiffs and the Class members such other, further, and different relief

2   as the nature of the case may require or as may be determined to be just, equitable, and proper by

3   this Court.

4   **JURY TRIAL DEMAND**

5        Plaintiffs, by their counsel, requests a trial by jury on those causes of actions set forth

6   herein.

7   Date: March 8, 2012               **BERMAN DeVALERIO**

8                                 By: _____

9                                     Joseph J. Tabacco, Jr.

10                            Todd. A. Seaver

11                            One California Street, Suite 900

                          San Francisco CA 94111

12                            Email: jtabacco@bermandevalerio.com

13                                      tseaver@bermandevalerio.com

14                            Simon Bahne Paris

                          Patrick Howard

15                            Charles J. Kocher

                          **SALTZ, MONGELUZZI, BARRETT &**

16                            **BENDESKY, P.C.**

17                            One Liberty Place, 52nd Floor

                          1650 Market Street

18                            Philadelphia, PA 19103

19                            Telephone: (215) 575-3986

                          Facsimile: (215) 496-0999

20                            Email: sparis@smbb.com

21                                    phoward@smbb.com

                                  ckocher@smbb.com

22

23

24

25

26

27

28

Daniel E. Gustafson
Jason S. Kilene
Michelle J. Looby
**GUSTAFSON GLUEK PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
        jkilene@gustafsongluek.com
        mlooby@gustafsongluek.com

Steve W. Berman
Anthony D. Shapiro
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
        tony@hbsslaw.com

Jeff D. Friedman (SBN 173886)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: jefff@hbsslaw.com

Elaine T. Byszewski (SBN 22204)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: Elaine@hbsslaw.com

1

Donald L. Perelman
Gerard A. Dever
**FINE, KAPLAN AND BLACK, P.C.**
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Telephone: (215) 567-6565
Facsimile: (215) 568-5872
Email: dperelman@finekaplan.com
        gdever@finekaplan.com

2

3

4

5

6

7    *Counsel for Plaintiffs and the proposed Classes*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                    30