DAVID S. MacCUISH (State Bar No. 54024)
TODD BENOFF (State Bar No. 192983)
LINDSAY G. CARLSON (State Bar No. 235999)
**ALSTON & BIRD LLP**
333 South Hope Street, Suite 1600
Los Angeles, California 90071
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100
david.maccuish@alston.com
todd.benoff@alston.com
lindsay.carlson@alston.com

Attorneys for Defendants WATTS REGULATOR CO.,
WATTS WATER TECHNOLOGIES, INC. and
WOLVERINE BRASS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND COURTHOUSE

| | |
|---|---|
| JASON TRABAKOOLAS and SHEILA STETSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WATTS WATER TECHNOLOGIES, INC., WATTS REGULATOR CO., WATTS ANDERSON-BARROWS METAL CORP., WATTS PLUMBING TECHNOLOGIES (TAIZHO) CO., LTD., SAVARD PLUMBING COMPANY, WOLVERINE BRASS, INC., AND JOHN DOES 1-100,<br><br>Defendants. | Case No. C12-01172 YGR<br><br>[Honorable Yvonne Gonzalez Rogers]<br><br>**MEMORANDUM IN RESPONSE TO ORDER FOR ADDITIONAL BRIEFING REGARDING MOTION TO DISMISS**<br><br>Hearing Date:  June 5, 2012 |

1    Watts is pleased to address the Court's Order directing additional briefing "regarding

2    whether a replacement is properly characterized as damages or injunctive relief under the CLRA."

3    Section 1780 of the California Civil Code, describes the remedies available under the CLRA.

4    As relevant here, the remedies available are "actual damages" and "[a]n order enjoining the methods,

5    acts, or practices" proscribed by the Act.  § 1780(a)(1), (2) (emphasis added).[1]  Thus, the CLRA

6    authorizes prohibitory injunctions designed to prevent further threatened deceptive practices.  It does

7    not authorize mandatory injunctions that would command a defendant to remedy the cause of an

8    alleged injury already inflicted, much less a mandatory injunction directing a defendant to replace all

9    its products.  No case law was located that allowed a mandatory injunction under the CLRA.  In this

10   case, the Named Plaintiffs seek a prohibitory injunction, but then also separately request that the

11   Court "order Defendants to replace all of the defective Toilet Connectors previously sold," an order

12   that would impose the cost of new products and installation labor on Watts. (Complaint ¶ 138.)  The

13   requested replacement order is not incidental to a prohibitory injunction permitted by the CLRA but

14   would instead require Watts to search out and replace all of its connectors sold since the late 1990's.

15   To characterize such action as injunctive relief would require that it take the form of a mandatory

16   injunction, a type of relief not provided for under the statute.  Moreover, the plain language of the

17   statute, and authoritative interpretive legislative history confirm that the requested replacement

18   constitutes damages under the CLRA and therefore requires notice.

19   The CLRA must be interpreted in accordance with the plain provisions of the statute and, if

20   the language is clear, that intent must be given effect. *Outboard Marine Corp. v. Superior* Court, 52

21   Cal.App.3d 30, 40 (1975). *See Syverson v. IBM*, 472 F.3d 1072, 1086 (9th Cir. 2007 ("We are not at

22   liberty construe any statute so as to deny effect to any part of its language.  It is a cardinal rule of

23   statutory construction that significance and effect shall, if possible, be accorded to every word.")

24   Section 1780(b) plainly states that only prohibitory injunctions preventing continuing acts in

25   violation of the CLRA were contemplated.   In addition, the legislative history reflects that

26

27

28

---

[1]  The CLRA also authorizes punitive damages, which are not alleged in this case, and restitution.
Plaintiffs do not seek restitution, which is the difference between what the plaintiffs paid and the
value of what was received. *In re Vioxx Class Cases*, 18 Cal.App.4th 116, 131 (2009).

injunctions were intended to prevent further deceptive practices and that there was no provision for, or discussion of, allowing mandatory injunctions directing replacement or other corrective measures. *See, e.g.,* Assembly Comm. on Judiciary, Questions and Answers Regarding Assembly Bill No. 292 (1970 Reg. Sess.) (attached as Exhibit A).

The structure of the statute confirms that a replacement remedy is associated with damages rather than an injunction. Pre-litigation notice must be given before commencing "an action for damages" and only "an action for injunctive relief" may be commenced without compliance with the notice requirement. § 1782(a), (d). The CLRA provides that "no action for damages may be maintained" if the defendant offers an appropriate "correction, repair, <u>replacement</u>, or other remedy." § 1782(b),(c)(3) (emphasis added.) "The purpose of the notice requirement of Section 1782 is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements." *Outboard Marine Corp. v. Superior Court, supra*, 52 Cal.App.3d at 40.

The CLRA thus provides that a replacement remedy is in lieu of an action for damages. This reflects the legislative judgment that replacement is a remedy that corrects a prior wrong and therefore is an appropriate substitute for an action for damages. "Therefore, the court should equate the term 'correction, repair, replacement or other remedy' with damages, since it is essentially a substitute for damages." Reed, <u>Legislating for the Consumer: An Insider's Analysis of the Consumer Legal Remedies Act</u>, 2 Pacific Law, J. 1, 18 (1971) (article by Chief Counsel of Assembly Judiciary Committee) (Exhibit B). Replacement is corrective in nature and moots a damage action. As distinguished from an injunction, the notice is intended to allow the defendant an opportunity to correct a mistake. *See* Assembly Comm. on Judiciary, Explanation of Amendments in Final Version of Assembly Bill No. 292 (1970 Reg. Sess.) (Exhibit C); Author's History of Assembly Bill No. 292 (1970 Reg. Sess.) (Exhibit D). The Act elsewhere confirms that "[n]o award of damages may be given" where the defendant "makes an appropriate correction, repair or <u>replacement</u> or other remedy of the goods . . . according to the provisions of subdivisions (b) and (c) of Section 1782." § 1784 (emphasis added).

According to the CLRA, if plaintiffs wish to seek replacement as the appropriate form of

2

1    corrective measure, they were required to request that in the pre-litigation notice required by Section

2    1782(a), not seek it in the complaint in the first instance.  Statutes must be construed based not only

3    on the language itself but also on the specific context in which that language is used.  *Johnson v.*

4    *Aljian*, 490 F.3d 778, 780 (9th Cir. 2007).  In the context of the CLRA, replacement is corrective of

5    past violations of the Act, for which pre-complaint notice requesting corrective action is required,

6    and is not the proper subject of a prohibitory injunction enjoining continuing violations.  A CLRA

7    plaintiff cannot circumvent the pre-litigation notice requirement by re-casting its request for

8    corrective action in the form of a mandatory injunction seeking to require the defendant to remedy

9    past violations by replacement, repair or other compensatory relief.  Any such argument would be

10   inconsistent with the Section 1780's limitation to prohibitory injunctions and would eviscerate the

11   notice requirement of Section 1782(a).  An order directing replacement is a "damage" remedy

12   requiring notice and not a prohibitory injunction within the meaning of Sections 1780(b) and

13   1782(d), for which notice was not required.  Reed, *supra*; *see Broughton v Cigna Healthplans*, 21

14   Cal.4th 1066, 1085 (1999)

15         In *Broughton*, the California Supreme Court explained that the purpose of the CLRA was to

16   protect the general public, not to remedy the claims of specific individuals.  The Court stated that

17   injunctive relief was intended:

18         "not to resolve a private dispute but to remedy a public wrong:  whatever the
             individual notice of the party requesting injunctive relief, the benefits of granting
19           injunctive relief by and large do not accrue to that party but to the general public in
             danger of being victimized by the same deceptive practices as the plaintiff suffered."
20           *Id*. at 1080.

21         Replacement, either for the Named Plaintiffs or the purported class, does not  prevent the

22   public at large from being subjected to the same alleged deceptive practices, but instead is designed

23   to redress the private wrongs to the Named Plaintiffs and the purported class.  This distinction is

24   made clear by *Broughton's* discussion of the Section 1782 notice provisions:

25         "The CLRA promotes such informal methods by requiring a consumer to notify those
             alleged to have committed deceptive practices at least 30 days prior to commencing
26           an action for damages, and by providing that the consumer may not recover damages
             if appropriate correction, repair, replacement or other remedy is given. (See §§ 1782,
27           subds. (a)-(c), 1784.) However, section 1782, subdivision (d), provides that an action
             for injunctive relief may be brought without giving such notice and waiting for such
28           remediation. These differing approaches to actions for damages and for injunctive

                                                    3

1  relief reflect the differing purposes of the two actions.  The former is primarily to
   remedy individual wrongs, and prescribes methods short of litigation to accomplish
2  this.  The latter is for the protection of the public and does not prescribe informal
   methods of resolution that would compromise that protective purpose."  *Id*. at 1085.

3

4      Under the *Broughton* rationale, replacement is a remedy constitutes damages for the private

5  wrongs already sustained by the plaintiffs and the purported class.  Pre-suit notice is required for

6  such private relief.  Replacement of connectors owned by the Named Plaintiffs (or even the class)

7  does not benefit the general public which is "in danger of being victimized by the same deceptive

8  practices as the plaintiff suffered."  21 Cal.4th at 1080.  Accordingly, replacement is in the nature of

9  damages under the statute, not injunctive relief, and requires notice.

10     In summary, the plain terms of the CLRA, the interpretive legislative history, and the

11 purposes and intent of the statute all indicate that replacement is properly characterized as damages

12 and not injunctive relief.  Since pre-litigation notice is a condition precedent to any action for

13 damages, it should have been given in this case in which the Named Plaintiffs have sought a

14 replacement order.  Therefore, Watts respectfully requests dismissal with prejudice.

15

16 Dated: June 13, 2012                    Respectfully submitted,

17                                         **ALSTON & BIRD LLP**

18

19

20                                             David S. MacCuish
                                           Attorneys for Defendants WATTS REGULATOR CO.,
21                                         WATTS WATER TECHNOLOGIES, INC. and
                                           WOLVERINE BRASS, INC.

22

23

24

25

26

27

28

MEMO IN REPONSE TO ORDER FOR ADDITIONAL BRIEFING RE MOTION TO DISMISSION
LEGAL02/33361444v2                                              CASE NO. C12-01172 YGR

EXHIBIT A

QUESTIONS AND ANSWERS REGARDING AB 292

(THE CONSUMERS LEGAL REMEDIES ACT)

QUESTION - What is the purpose of AB 292?

ANSWER   - To give consumers adequate remedies against merchants engaging in specified, deceptive business practices.

QUESTION - What are the remedies?

ANSWER   - Actual money damages or loss incurred by the consumer, injunctions to prevent further deceptive practices by the merchant, and punitive damages.

QUESTION - Why is the bill needed?

ANSWER   - Existing law provides no satisfactory remedy against such practices. The consumer is forced to sue in an action on the contract -- in many of these cases damage is incurred but no contract is ever consummated-- or he must bring an action for fraud, an action which contains some of the most difficult allegations to prove found in our law.

QUESTION - Is the Attorney General involved?

ANSWER   - Nothing in the Act prevents the Attorney General from initiating a lawsuit or from joining an action based on the Act, but it is not necessary that he be involved. The point is that the consumer has a remedy he can pursue with absolutely no expense to any state or local governmental agency.

LEGISLATIVE INTENT SERVICE    (800) 666-1917

**LIS-3c**

6

QUESTION - Are "class actions" allowed?

ANSWER   - Yes.  A consumer can sue for himself and on behalf
          of other consumers deceived in the same manner, whether
          he knows their names or not.  This prevents court
          congestion caused by a multiplicity of actions and
          relieves the merchant from defending many, successive
          lawsuits.


QUESTION - Who will the Act benefit most?

ANSWER   - Low income or ghetto consumers.  One of the most
          important points in the Report of the National Advisory
          Commission on Civil Disorders is that much resentment
          against the establishment found in ghetto areas is
          generated by unconscionable practices of merchants in
          business there.

               This bill will enable legal aid societies, district
          attorneys' consumer fraud units, and other legal assistance
          agencies to more easily combat such unconscionable practices.


QUESTION - Is this an "anti-business" bill?

ANSWER   - Absolutely not.  The intent is to stop deceptive
          practices and even to drive the unethical merchant from
          the marketplace.  The result should be increased business
          and a better reputation for the ethical merchant.  We
          are doing everything possible to make certain that the
          bill will not generate frivolous lawsuits against the
          honest businessman.  In that regard testimony of business
          representatives as the bill moves through the Legislature

(800) 666-1917

LEGISLATIVE INTENT SERVICE

7

will be most important.

Amendments to the initial version of the bill make it clear that the businessman unintentionally violating the Act will not be penalized if he attempts to correct his mistake.

LEGISLATIVE INTENT SERVICE   (800) 666-1917

EXHIBIT B

# Legislating For The Consumer: An Insider's Analysis Of The Consumers Legal Remedies Act

JAMES S. REED*

*This article examines in detail the new California Legal Remedies Act of 1970 analyzing the meaning, application, and legislative intent behind the Act. The author was involved in the preparation of all legislative drafts of the Act and participated in all conferences and hearings as it passed through the legislative process. This is his interpretation of its meaning and intended application. Of particular importance is the detailed analysis of the new proscribed deceptive practices and the ramifications of the new consumer class action provisions.*

## INTRODUCTION

The resurgence of the consumer as a beneficiary of legislative largesse in California has begun. The State Legislature passed the Consumers Legal Remedies Act during its 1970 Regular Session.[1]

* A.B., San Diego State College, 1961; J.D., University of California, Hastings College of Law, 1965; Member California Bar Association; Chief Counsel, Assembly Judiciary Committee, California Legislature, 1967-71. *This interpretation of the meaning of the Act and its intended application. It is not a legislative report, nor does it purport to represent the point of view of the author of the Act or any other legislator or legislative committee.*

1 A.B. 292, Cal. Stats. 1970, c. 1550, introduced by Assemblyman James A. Hayes, chairman of the Assembly Judiciary Committee. Appendix A is a reprint of that version of the bill which was enacted as Cal. Civ. Code § 1750, et seq.

---

**Coastline Crisis**    226

This comment reviews contemporary examples of unchecked private and governmental development of the California coastal area and discusses instances where development has been in derogation of public access to California beaches. It is the author's contention that state policy, expressed in the state constitution and statutes, guarantees to the citizenry a right of access to beaches and he briefly analyzes attempted legislation introduced in the California Assembly during the 1970 Regular Session.

**Arbitration, A Third Alternative**    245

This comment examines the recent California statutes passed during the 1970 session to provide a method for determining just compensation by arbitration between the condemner and the landowner. Presumably the landowner can now turn to arbitration in a secure bargaining position without fear of depreciating his award by incurring exorbitant costs. However, upon critical examination, the method provided by this legislation may not be of substantial benefit to the landowner.

**Landlord-Tenant Legislation—Revising An Old Common Law Relationship**    259

Pursuant to the California Law Revision Commission's recommendations, legislation was introduced which would require the landlord to mitigate damages arising when the tenant abandons or is justifiably evicted from the leasehold. The author traces the development of landlord-tenant law from early common law to recent enactments as he indicates the practical effect of the changes made, their merits and possible deficiencies.

## REVIEW OF SELECTED 1970 CALIFORNIA LEGISLATION

275

Published semimonthly by the students of the University of the Pacific, McGeorge School of Law, Sacramento, California. Copyright 1971 by the University of the Pacific, McGeorge School of Law. Postage paid at Sacramento, California, and at additional offices. Subscription, $7.00 per year, payable in advance until canceled by subscriber on sixty days notice. Single copy price, $4.50. Prices subject to change.

Requests for back issues and subscription information should be addressed to Managing Editor, Pacific Law Journal, 3282 Fifth Avenue, Sacramento, California 95817.

Manuscripts should be sent to the Articles Editor, Pacific Law Journal, 3282 Fifth Avenue, Sacramento, California 95817.

The Journal prints all matter it deems worthy of publication, but takes no position on, nor assumes any responsibility for the views expressed herein.

The Journal gratefully acknowledges advance sheet services from the West Publishing Co. and from the Bancroft-Whitney Co.

LEGISLATIVE INTENT SERVICE    (800) 666-1917

*Pacific Law Journal / Vol. 2*

It was signed by the Governor on September 20, 1970, and became operative on January 1, 1971.

From the consumer's standpoint, the Consumers Legal Remedies Act is the most important legislation passed in California since the Unruh Act.[2] It provides damages and injunctive relief to consumers damaged by specified deceptive practices[3] on the part of merchants and sets forth the procedures to secure such relief.[4] For the first time since 1872, the legislature has recognized the class action concept,[5] and for the first time in California history it has allowed class actions as a procedural device in connection with a specific statute.[6] The future of the Act as an effective tool in the hands of a defrauded consumer now depends on the resourcefulness of his attorney and the construction given the Act by the court which decides his case. Unskilled attorneys or unimaginative judges could effectively destroy the utility of this legislation.

Anyone familiar with current legislative trends in California recognizes that the two most fertile areas for imaginative legislation are in consumer protection and environmental protection. The latter is receiving adequate study by a myriad of governmental and non-governmental groups,[7] but whether effective action in the consumer protection area will occur is problematic. Why problematic? The answer is obvious to anyone familiar with the basic operation of the legislative process. Business interests are organized and come to their legislators armed with persuasive statistics and compelling arguments. Consumer interest groups are few in number and their approach to the problem is frequently repugnant to otherwise concerned legislators. What consumer advocates must learn is how to translate their commendable goals into legislative action. Perhaps a few comments on the lessons learned by the interest groups advocating the Consumers Legal Remedies Act would be in order.

## PRELUDE TO CONSUMER PROTECTION LEGISLATION

With a few notable exceptions,[8] attempts to enact legislation for the benefit of California consumers has been notoriously ineffective. The

---

2. Cal. Civ. Code § 1801, et seq.
3. Cal. Civ. Code § 1780.
4. Cal. Civ. Code §§ 1781-1784.
5. Cal. Code Civ. Proc. § 382.
6. Cal. Civ. Code § 1781.
7. E.g., Speech to the Annual Meeting of the State Bar on "Assembly Judiciary Committee Hearings on Ecology and the Law", Los Angeles, California, September 14, 1970; Environmental Bill of Rights, California Assembly Select Committee on Environmental Quality, March, 1970.
8. Unruh Act, Cal. Civ. Code § 1801, et seq.; Rees-Levering Act, Cal. Civ. Code § 2981, et seq.

---

*1971 / Consumer Legislation*

reason for the failures has not been a lack of concern on the part of legislators.[9] Rather, the lack of success can be traced to (1) a paucity of consumer interest groups willing to work effectively in support of legislative proposals, (2) poor organization of the consumer movement in general, and (3) a woeful lack of knowledge of the legislative process and how to operate effectively within it. The first two problems can only be solved by adequate consumer leadership and by finding the funds necessary to underwrite a legislative program. The third can be solved only by effort on the part of those interested in improving the lot of the consumer to understand the fundamental nature of the legislative process.

Consumer movements are, for the most part, notoriously idealistic. Such idealism is fine in the abstract, but it is totally self-defeating in an arena where the one who most frequently succeeds is the one who best understands the art of the possible and how to employ it. A Ralph Nader, with his unique ability to command public attention, can rely upon broad press coverage and consequent constituent pressure on legislators to bring about change. It does not seem to be his purpose to become involved in actual negotiations on legislation with a view toward achieving the maximum possible benefit to the consumer under the circumstances. His methods, however, though effective and immensely beneficial, are exceptional and should be avoided. Consumer groups in California must understand this precept and start learning how to use their considerable potential power[10] within the day-to-day context of the legislative process. Such was the lesson learned by those consumer advocates who participated in the development and passage of the Consumers Legal Remedies Act.

Too few representatives of non-business interests know what lobbyists know all too well—the legislative process, in the absence of overbearing power on one side of an issue, is one of compromise. Consumers, properly organized and represented, now have the power to affect compromises on legislation affecting their interests. That they fail to understand how to apply that power is a major reason for past failures.

---

[9] Many so-called consumer bills are introduced in the legislature each year. In 1970, for example, some of the more significant bills introduced would penalize bait advertising (A.B. 256, 1970 Regular Session), eliminate balloon payments in Unruh and Rees-Levering Act contracts (A.B. 244, 1970 Regular Session), regulate credit rating organizations (A.B. 2267, 1970 Regular Session and A.B. 149, Cal. Stats. 1970, c. 1348), and allow individual or class actions by consumers on account of "unconscionable" acts by merchants (S.B. 771, 1970 Regular Session).

Among the more important bills which passed and became law were the following: A.B. 2366, Cal. Stats. 1970, c. 1394 (establishing a California Department of Consumer Affairs); S.B. 272, Cal. Stats. 1970, c. 1333 (regulating manufacturers warranties).

[10] Since every Californian is a consumer, an organized consumer movement could exert irresistible pressure in a political arena.

(800) 666-1917        LEGISLATIVE INTENT SERVICE

Legislators, despite the protestations of cynics, are responsive to their constituencies. They are equally responsive to the criticisms of the mass media. Consumer groups must organize the constituency in key legislative districts with the view of encouraging the voter to express his feelings to his legislator and the editor of his local newspaper *en masse* and in any way possible. Consumer news is always good copy; hence, the press can be depended upon to support legitimate consumer efforts[11] thereby increasing pressure upon legislators to vote on the consumer's behalf.

As for the legislative process itself, consumer groups must rid themselves of the misconception that appearances at committee hearings or a few letters to legislators are all that is necessary. Committee hearings, though informative and necessary, are not where many key decisions are made. Most of these decisions are made in private meetings involving legislators, legislative staff, business representatives and others. Consumer groups must make an effort to be informed of such meetings, and be ready to attend armed with arguments, alternatives, and, most importantly, with an estimation of what can realistically be attained in the consumer's behalf. That they should initiate such conferences is axiomatic.

What is a desirable approach to legislative action from the consumer's standpoint? It must first be recognized that consumerism is not an issue that necessarily must be resolved with all due speed if the fabric of our society is to remain intact. Urgent war on all fronts is not necessary; there is sufficient time to engage in tactical actions, to retrench and to negotiate. Gradual advancement through the development of sound programs acceptable to responsible legislators is the correct approach.

Gradualism is not a rationalization, though it may seem so to the consumer activist. Legislative action in any area must, with one important exception,[12] be undertaken with some understanding of the common desires of the vast majority of the public and be consistent with the desires of the majority to the maximum extent possible. Failure to recognize that principle will result in ill-advised legislation which will simply be ignored, if, in fact, any legislation is ever passed.

Where abuses exist in any area of potential legislative concern, attempts to correct them should, therefore, be made with an eye to practi-

[11] The fact that the press is so responsive to consumer issues has not been exploited to advantage by consumer groups in California. The advantage to business in towns of well-financed public relations campaigns and lobbyists can be offset to a large degree by a consumer conscious press.
[12] The desires of the majority must never be allowed to infringe upon the constitutional protections of the minority.

4

(800) 666-1917     LEGISLATIVE INTENT SERVICE

cal acceptance and use of the law. The result can and should be constant progression, without ignoring the lessons experience teaches. A radical approach where a substantial segment of the community vehemently opposes legislative efforts will inevitably result in the death of the legislation.

The primary exception to the pragmatic rule that legislatures should be guided by common mores, practices or beliefs, and seek to change them by small degrees, is the concept that community practices should not be allowed to thwart any of the constitutional freedoms of a citizen. A free society cannot countenance violations of rights essential to the concept of true liberty; to do so would inevitably result in a fundamental and unfortunate change in political organization. Fortunately, however, consumer problems do not often involve the fundamental rights of a free citizen. Consumers are within the penumbra of that issue only, if at all, when a seller's products are a threat to the health and safety of the public. But, in that case, the courts and regulatory agencies are already possessed of the power to end such threats.

## THE CONSUMERS LEGAL REMEDIES ACT

### The Need for Legislation

It is difficult to prevail in a lawsuit based upon deceptive practices by a merchant. A general fraud theory is normally the basis for a complaint, and fraud, with its scienter element,[13] is not easy to prove, since evidence of intent is usually at best circumstantial. But even when a good case exists, the damage to a consumer resulting from a deceptive practice may be so trivial that a lawsuit is not worth the expense. To sue is unthinkable to a low income person but, unfortunately the low income, unsophisticated person is most often the victim of deceptive sales practices.[14]

The lack of suitable legal means to prevent or control exploitive practices is cause for concern. The Kerner Commission[15] found that much of the violence in recent urban disorders was directed at stores and other commercial establishments in disadvantaged neighborhoods.[16] Rioters seemed to focus on stores operated by merchants who, they believed, had been charging exorbitant prices or selling inferior goods.[17]

[13] CAL. CIV. CODE § 1709; see 2 WITKIN, SUMMARY OF CALIFORNIA LAW, Torts § 199, et seq. (7th ed. 1960).
[14] 1 REPORT OF NATIONAL ADVISORY COMMISSION ON CIVIL DISORDERS, 274-5 (Bantam 1968).
[15] The National Advisory Commission on Civil Disorders, appointed by President Lyndon B. Johnson on July 27, 1967, was chaired by Governor Otto Kerner of Illinois.
[16] Id. REPORT, supra note 14, at 274.
[17] Id. Surprisingly, it has been found that unscrupulous merchants in ghetto

5

Pacific Law Journal / Vol. 2

After investigation the Commission concluded that "exploitive practices flourish"[18] in ghetto neighborhoods:

Ghetto residents who want to buy relatively expensive goods cannot do so from standard retail outlets and are thus restricted to local stores. Forced to use credit, they have little understanding of the pitfalls of credit buying. But because they have unstable incomes and frequently fail to make payments, the cost to the merchants of serving them is significantly above that of servicing middle-income consumers. Consequently, a special kind of merchant appears to sell them goods on terms designed to cover the high cost of doing business in ghetto neighborhoods.[19]

Many businessmen argue that deceptive sales techniques or other unconscionable practices are used, if at all, only by the "fly-by-night" merchant who does not depend on community good will to maintain a profitable business. The Kerner Commission's report refutes that contention. The necessitous consumer with limited options and a poor credit history can be induced to buy by even the most disreputable merchant.[20] When he does buy and cannot make payments, trouble begins. An unpaid or delinquent debt will be ruthlessly enforced by some merchants or, more often, their assignees.

Merchants also argue that even if a practice does not conform to the letter of the law or generally recognized ethical standards damage is so small in most cases that no one is really hurt. They ask why the legislature should concern itself with such a "trivial" problem since any legislative action will necessarily apply to all merchants. The answer is grounded in economics; society cannot allow the wrongdoer to profit without encouraging others to engage in the same type of conduct. In a free enterprise economy, an unethical merchant will use those methods which best ensure him a profit. But if the possibility of profit diminishes because of the existence of practicable legal means of taking the unethical profit from him, his methods will change. The same economic rationale, as well as general ethical principles, dictates that ill-gotten gains should not be retained—even if the gain in an individual case is minute, and even if the victim cannot be located.

The Consumers Legal Remedies Act, reprinted in full in Appen-

neighborhoods do not attribute their poor customer relations to such practices nor do they believe that the looting or arson they suffer during riots is related to their merchandising habits. See SUPPLEMENTAL STUDIES FOR THE NATIONAL ADVISORY COMMISSION ON CIVIL DISORDERS, RACIAL ATTITUDES IN FIFTEEN AMERICAN CITIES 130-31 (1968).
18 REPORT, supra note 14, at 275.
19 Id.
20 REPORT OF NATIONAL ADVISORY COMMISSION ON CIVIL DISORDERS, 274, et seq. (1968).

1971 / Consumer Legislation

dix A, represents an attempt to alleviate the effects of these very real social and economic problems.[21]

Policy

The Consumers Legal Remedies Act might be better titled the California Deceptive Practices Act. The title chosen, though admittedly cumbersome, was selected simply as a means of influencing legislative committee assignments and emphasizing the consumer aspects of the measure. It sets forth sixteen specific deceptive practices[22] and provides procedures for commencing individual[23] or class actions,[24] and

21 The following testimony explaining the Act was given before the Assembly Judiciary Committee on May 25, 1970, by Assemblyman James A. Hayes, author of the legislation:

You have before you AB 292, the Consumers Legal Remedies Act. It represents extended and thorough effort to arrive at legislation which will give consumers in this state much needed remedies against deceptive practices in the market-place, and yet will not needlessly encourage frivolous and harassing lawsuits against legitimate businessmen.

Predictably, consumers are not entirely happy—the measure could conceivably be stronger—and business interests are opposed to certain provisions in the bill. Both attitudes are to be expected with respect to a bill such as this, but the assistance of both sides ... the California Retailer's Association and the Association of California Consumers is most appreciated by the committee staff and me.

Although the provisions for class actions have been the most controversial part of the bill and the one most feared, most misunderstood, they are very nearly a statutory compilation of existing law. In the case of Daar v. Yellow Cab Co. (67 Cal. 2d 695), the Supreme Court of California allowed a class action to be maintained by the plaintiff and all persons similarly situated, i.e., all those who, during a four year period during which, in the company's cabs were registering at an illegal rate. The bill does not go beyond Daar but in fact builds in the opportunity for the defendant to request a preliminary hearing on the issue of whether a class action is proper, a procedure not found in the law as it now stands.

A second safeguard against class actions of the nuisance variety are provisions, unprecedented to my knowledge, which require notice to the merchant and an opportunity to correct or repair as a condition precedent to an action for damages.

The really new law is that contained in Chapter 3 entitled "Deceptive Practices." The practices set forth there are reprehensible and simply are not employed by the legitimate businessman. The legislation would give no active advantage to the dishonest businessman and, certainly, if such practices are prevented the honest merchant has as much to gain as the consumer. His profits will be larger as a result of ... kind of competition, and his type of business as a whole will gain goodwill in the form of enhanced credibility.

The Report of the National Advisory Commission on Civil Disorders found that local "and deceptive practices of merchants in low income areas to be factors contributing to the disturbances in our cities in recent years. This bill gives citizens in those areas the right to seek redress in the courts as individuals, without having to ask the government—state or federal—for assistance. It is my opinion and desire that legislation of this type will have a substantial deterrent effect as to the deceptive practices it makes unlawful, and that it will, as a result, aid in establishing better relations between the businessman and the consumer.
22 CAL. CIV. CODE § 1770.
23 CAL. CIV. CODE § 1780.
24 CAL. CIV. CODE § 1781.

(800) 666-1917    LEGISLATIVE INTENT SERVICE

for the settlement of actions where the merchant is willing to rectify any damages caused (and in fact does correct them).[25]

The following statement of legislative policy is of critical importance for an adequate understanding of the Consumers Legal Remedies Act:

This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.[26]

This policy statement is the basic thread that ties together the numerous provisions of the Act. Strict adherence to this legislative intent by the courts is strongly urged, for without such adherence the Act will not provide that degree of consumer protection intended by the legislature.

The Act itself is a product of intense extended negotiation with representatives of virtually all segments of the business community[27] and, not unnaturally under such circumstances, is a compromise between the ideal consumer measure and a series of watered-down alternatives[28] offered by business representatives. As such its language is at times confusing, making it difficult to understand the intent of the legislature in enacting specific sections. Unfortunately, measures passed by the California Legislature do not normally contain statements of legislative policy. Such statements are valuable guides to both trial and appellate courts in construing legislation. In the case of the Consumers Legal Remedies Act, the policy statement was intended as a concise guide to the interpretation and application of its many provisions. The message is clear—when in doubt, decide in the consumers' favor. That is especially apparent in the admonition that the Act is meant to "provide efficient and economical procedures" to protect the consumer, and, of

25. Cal. Civ. Code § 1782(b) and (c).
26. Cal. Civ. Code § 1760.
27. Assemblyman James A. Hayes testified in both Assembly and Senate Committees that the following were involved in the negotiations at one time or another:
(a) Consumer representatives.
 1. California Attorney General
 2. National Consumer Law Center
 3. Association of California Consumers
 4. Various Legal Aid Societies and similar organizations
 5. Dozens of individual attorneys and law professors.
(b) Industry.
 1. California Retailers Association
 2. General Motors Corporation
 3. California Loan and Finance Association
 4. Oil Industry
 5. California Newspaper Publishers Association
 6. California Manufacturers Association
 7. Household Finance Corporation
 8. California Bankers Association
 9. California State Chamber of Commerce
28. Infra note 52.

course, to provide relief when he has been damaged. Resort to the courts is, at best, cumbersome, but if the damaged consumer is faced with inefficient procedures when he does go to court, he is essentially without rights. Since the Act was designed to add to any protections the consumer might otherwise have, it follows that any ambiguities it might contain must be resolved to provide the consumer with quick relief. Otherwise, the provisions of the Act will not be used, its underlying economic rationale will fail, and the legislature will have indulged in an idle act. That, certainly was not intended.

It is not the policy of the Act, however, to subject the honest businessman to ill-founded lawsuits brought by grudging consumers or generated by overzealous lawyers.[29] It contains procedures designed to insulate "responsible businessmen from spurious or vexatious lawsuits"[30] as well as procedures meant to provide efficient relief to the truly damaged consumer.

## Application

The provisions of the Act may not be waived and are not exclusive.[31] The remedies provided are in addition to any others provided by law.[32] Nothing within the context of the Act is meant to limit any other rights or remedies possessed by a defrauded consumer.[33] In short, the Act is additive from the standpoint of the consumer.

Obviously, if the necessitous consumer is to be provided with additional protection any legislative action compromising his existing rights would be regressive. Hence, in order to avoid that possibility the additive provisions were inserted. If the consumer wishes to sue on grounds not specifically set forth in Civil Code section 1770 he may do so without following the procedures set forth in the ensuing sections. Even though the seller's action may fit within one or more provisions of section 1770 the buyer is not mandated to use the remedies set forth in the Act. If he were to be so confined the additive provisions would be rendered meaningless.

Given the supplemental nature of the Act, it goes without saying that litigation commenced before its effective date is not affected by it. Nevertheless, a specific provision was inserted stating that the Act applies substantively or procedurally only to actions filed on or after January 1,

29. Statement of Assemblyman James A. Hayes, supra note 21.
30. Report Relative to A.B. 292, Journal of the California Assembly, 8464-5, 1970 Regular Session.
31. Cal. Civ. Code § 1752.
32. Id.
33. Id.

LEGISLATIVE INTENT SERVICE

1971.[34] The Act does not apply to transactions providing for the construction or sale of *entire* residences nor to structures for commercial or industrial occupancy.[35] Similarly it does not apply to sales of real property.[36] The same exemption is found in the Unruh Act[37] and guidance in application may be obtained by examining the legal history of the appropriate section of that statute.

Communications media carrying advertising at the request of merchants are likewise exempted "unless it is established that . . . owners or employees had knowledge of the deceptive acts or practices"[38] communicated by such media. It does not appear that this specific exemption is of the statute that this specific exemption is necessary and it is hoped that confusion will not result. The statute does provide remedies for those consumers damaged by specifically proscribed deceptive practices on the part of a merchant. It applies to transactions for the sale or lease of goods or services "primarily for personal, family or household purposes"[39] or for "services furnished in connection with the sale or repair of goods."[40] A contract is not a necessary condition precedent to an action.[41] The only transaction necessary is some "agreement between a consumer" and the defendant "whether or not the agreement is enforceable by action, and includes the making of, and the performance pursuant to that agreement."[42] The agreement need not be express. An advertisement which invokes action by a consumer certainly "includes the making of" an agreement and is therefore a "transaction" within the meaning of the statute. A construction any less broad would render several subparagraphs of Civil Code section 1770 worthless as a practical matter.[43]

*Deceptive practices*

There are sixteen specific unfair or deceptive acts or practices made

34. Cal. Civ. Code § 1756.
35. Cal. Civ. Code § 1754.
36. Id.
37. Cal. Civ. Code § 1801.4.
38. Cal. Civ. Code § 1755.
39. Cal. Civ. Code § 1761(a).
40. Cal. Civ. Code § 1761(b).
41. Cal. Civ. Code § 1761(c).
42. Id.
43. For example, subsection (i) makes unlawful the advertising of goods without intent to supply a reasonably expected demand. That section is intended to protect the consumer who takes the time and trouble to visit the establishment of the advertiser only to be told that the advertised product is unavailable. If the statute was to be construed as requiring a formal agreement, no action would ever result under subsection (i).

LEGISLATIVE INTENT SERVICE

(800) 666-1917

---

1971 / Consumer Legislation

unlawful by the statute.[44] Most are similar to acts or practices proscribed by the Federal Trade Act[45] and its accompanying rules and regulations. They were adapted for the most part from a tentative draft of the proposed National Consumer Act.[46] The substance of the sixteen enumerated deceptive practices is misrepresentation and fraud. The deceptive practices seek to provide remedies for, but are not limited to, such practices as "bait" or "switch" selling.[47] As originally introduced the measure had omnibus clauses making unlawful any trade practice which is "oppressive or otherwise unconscionable in any respect"[48] or which fails to comply with any state or federal consumer protection statute.[49] The latter phrase was reconsidered and almost immediately found to be too broad. It would have provided a double penalty, for example, to persons found to have violated the Unruh Act or federal "truth-in-lending" act, both of which carry their own penalties. Hence, it was thought to be unnecessary in light of the purpose for which the Consumers Legal Remedies Act was introduced.

The unconscionability language was dropped after considerable negotiation with business interests. This was a matter of serious concern to business representatives and its retention would have jeopardized the future of the bill at a very early stage. Coincidently, the legislature had refused to insert a similar provision in the Commercial Code seven years earlier.[50] In an effort to continue the Act through the legislative process, therefore, a compromise was effectuated and the unconscionability language was dropped.[51]

Proposals were offered during the course of the legislative study of

44. Cal. Civ. Code § 1770. For an explanation of these deceptive practices see Appendix B to this article.
45. Federal Trade Commission Act § 5, 52 Stat. 111 (1938), 15 U.S.C. § 45 (1964).
46. National Consumer Act, Tentative Draft of Dec. 16, 1969, prepared by National Consumer Law Center, Boston College Law School, Brighton, Massachusetts.
47. See note 44 supra.
48. A.B. 292, 1970 Regular Session, as introduced Jan. 21, 1970, § 1771(a).
49. Id. at § 1771(b).
50. The California Commercial Code has no section similar to section 2-302 of the Uniform Commercial Code, which reads as follows:
(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.
51. For a general discussion of the reasons pro and con on adoption of Section 2-302 of the Uniform Commercial Code see California Bar Committee on Commercial Code, A Special Report, The Uniform Commercial Code, 37 Cal. Bar J. (1962); Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary, Part I, The Uniform Commercial Code, at 455-57.

the Act that section 1770 be amended to require that the specified unlawful acts be punishable only when committed with intent or knowledge on the part of the seller. Such proposals were similar to Nixon administration proposals already introduced in Congress.[82] They were not accepted primarily because the inclusion of a scienter requirement would have resurrected all the difficulties inherent in proving common law fraud and correspondingly diminished the utility of the statute.

*Remedies and Procedures*

The statute provides for actions for damages on behalf of any consumer who suffers any damages as a result of a deceptive practice declared by the Act to be unlawful. The consumer may obtain actual damages, injunctive relief, punitive damages, or such other or inclusive relief as the court may deem proper.[83] There is no requirement that the Attorney General or any other governmental agency obtain a judgment prior to an action by an individual or a class of individuals. That requirement—commonly called "triggering mechanism"—constitutes part of a Nixon administration proposal[84] and was urged as an amendment to the Consumers Legal Remedies Act. It was unacceptable for several reasons. For one, the office of the Attorney General of California is seriously understaffed in its consumer affairs section and would be unable to prosecute even the most serious and repetitive of the unlawful practices that have already resulted in damage to consumers. As a result, there is no guarantee that the Attorney General would act in a given case and if he did not act the defrauded consumer would be without rights under the Act. Second, it generally takes a great deal of time for bureaucratic bodies—whether state or federal—to act. In the meantime the "fly-by-night" merchant has disappeared, evidence has become stale, and the assets of marginal sellers have been hidden or dissipated. More often, as time passes the consumer with a relatively small claim will have lost interest, thereby allowing the merchant to retain the unethical gain resulting from his unlawful practices. Such a result would effectively destroy the economic underpinning of the Act as discussed earlier.

The statute was amended in the Senate Judiciary Committee to insert sub-venue provisions.[85] Through what appears to have been an oversight, those provisions refer only to actions in municipal or justice

82. H.R. 14931, 91st Cong., 1st Sess. (1969); S. 3201, 91st Cong., 1st Sess. (1969).
83. Cal. Civ. Code § 1780.
84. Id.
85. Cal. Civ. Code § 1780(b).

12

courts.[56] However, it was never once considered that actions would be limited to those courts if a superior court would otherwise have jurisdiction. The sub-venue sections were intended merely to indicate which municipal or justice court would be the proper one in the event such courts had jurisdiction. The statute should, therefore, be amended to make it clear, as was intended, that actions may also be commenced in superior court if the damages to the individual or to the class as a whole, if a class action is filed, exceed $5,000.

Code of Civil Procedure section 382 states that "when the question is one of a common or general interest, of many persons, or when the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." That proviso was the sole authority for class actions in California until the passage of the Consumers Legal Remedies Act. The class action concept is historically grounded in principles of equity and based upon considerations of fairness and convenience.[57] Although it is not necessary for an understanding of the Consumers Legal Remedies Act to examine the California or common law history of class actions, the equitable nature of such actions must be emphasized. All legislative discussions of the class action aspect of the new statute proceeded on the implied assumption that the court would decide procedural questions in a manner that is fair and equitable to all concerned parties. The courts proceed in that manner under Code of Civil Procedure section 382 and there is no intent in enacting the deceptive practices act to guide them in other directions.[58] In short, the literal language of the statute should be considered secondary to considerations of equity and fairness in interpreting and applying the statute.

The basic class action section of the Act states as follows:

Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.[59]

56. Id.
57. For a general discussion of the nature of class actions see Daar v. Yellow Cab, 67 Cal. 2d 695, 703-4 (1967); Weaver v. Pasadena Tournament of Roses, 32 Cal. 2d 833, 837 (1948); 2 Witkin, California Procedure, Pleading § 99 (1954); Chafee, Some Problems of Equity or Equity, 200-05 (1950).
58. For examples of the manner in which California courts have interpreted Code of Civil Procedure section 382 see: Rosicrucian Fellowship v. Rosicrucian Fellowship Non-Sectarian Church, 39 Cal. 2d 121 (1952); Simmons v. California Institute of Technology, 34 Cal. 2d 264 (1949); Miracle Adhesives Corp. v. Peninsula Title Assoc. (1949), Cal. App. 2d 591 (1958); Lloyd v. County of Los Angeles, 41 Cal. App. 2d 808 (1941); Smith v. Wright, 188 Cal. App. 2d 790 (1961); Woods v. Berry, 1162 Cal. App. 675 (1931); Hink v. Superior Court of Los Angeles, 58 Cal. 2d 921 (1962).
59. Cal. Civ. Code § 1781(a).

Pacific Law Journal / Vol. 2

If a class action is filed the court may permit it to be maintained if the following conditions are found to exist:

(1) It is impracticable to bring all members of the class before the court.

(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

(4) The representative plaintiffs will fairly and adequately protect the interest of the class.[60]

The second section which describes the conditions precedent to the maintenance of an action are almost identical to Federal Rule 23(a).[61] The federal experience would, therefore, seem to be good authority in construing the California statute.

There are no legislative reports nor was there any extensive discussion regarding the intended application of the two class action sections.[62] The legislature was well aware, however, of the case of *Daar v. Yellow Cab*,[63] the latest and most important case involving class actions in California. That case involved the propriety of a class action by one user of Yellow Cab on behalf of himself and all other users of the defendant's script (discount) books during the four year period when, it was alleged, the defendant's meters were deliberately adjusted to register rates in excess of those allowed by the local regulatory agency. Another count was on behalf of all purchasers of the cab company's services not using script books. The class action was held to be maintainable.[64] The *Daar* case is significant for its unshackling of the class action from fixed rules. The court began by summarizing pre-existing decisional law as requiring that two conditions be met in order to sustain a class action:

(1) there must be an ascertainable class; . . . and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented.[65]

60 Cal. Civ. Code § 1781(b). These sections are considerably more detailed than the class action section in Conn. or Civil Procedure § 382.
61 Fed. R. Civ. P. 23(a). For illustrative cases interpreting Federal Rule 23(a) see: Giordano v. Radio Corporation of America, 183 F.2d 558 (3d Cir. 1950); Zachman v. Erwin, 186 F. Supp. 681 (S.D. Tex. 1959); Bain I. Blank, Inc. v. Warren-Connally Co., 19 F.R.D. 108 (S.D.N.Y. 1956); Kansas City Mo. v. Williams, 205 F.2d 47 (1953); Kainz v. Anheuser-Busch, 194 F.2d 737 (1952); Knowles v. War Damage Corp., 171 F.2d 15 (1948); Tunstall v. Brotherhood of Locomotive Firemen, 148 F.2d 403 (1945); Atwood v. National Bank of Lima, 115 F.2d 861 (1940).
62 See note 54 and 55, supra.
63 67 Cal. 2d 695 (1967).
64 Id. at 717.
65 Id. at 704.

14

1971 / Consumer Legislation

But what is an ascertainable class? Certainly in *Daar* the purchasers of script books could be ascertained from company records. But who period who had paid cash? Since the action was held properly maintained the requirement of an ascertainable class must have been reasonable class and community of interest requirement was as follows: "[W]hether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved."[66] The focus then is almost entirely upon the community-of-interest test, not whether there is an ascertainable class.

What constitutes a sufficient community of interest? The court in *Daar* indicated that a common fund is not essential and that it is not necessary that common relief be sought. But rather than establish any fixed or arbitrary rule the court stated:

Indeed, rather than articulating any specific test, we have always maintained that "a determination of whether a particular plaintiff can fairly protect the rights of the group he purports to represent is necessarily dependent upon the facts and circumstances of each case."[67]

In other words, the important consideration is what is equitable under the circumstances. The court discarded any fixed rules which may have developed under prior decisional law and based its decision squarely upon principals of equity. It is necessary that the class action provisions of the Consumers Legal Remedies Act be interpreted in that spirit, therefore, if the Act is to be truly effective. It is significant to note that the *Daar* court took cognizance of Federal Rule 23 and found that rule to be "in substantial coincidence" with the courts opinion of the "applicable criteria under section 382."[68] It fairly invited the

66 Id. at 706.
67 Id. at 710.
68 Id. at 709. One of the defendant's strongest arguments in *Daar* was that the community of interest requirement not only included common issues of law and fact, but also extended to the remedy sought. Inasmuch as plaintiff's remedies were not perfectly uniform, the defendant argued that his demurrer should be sustained. The court responded that "a requirement of common relief has no compelling importance and its absence presents no insuperable difficulties (67 Cal. 2d at 709)." The court reasoned that the remedy sought is a mere "subsidiary question" that involves individual losses, and it is only after the resolution of the other legal and factual questions that such "individual interests become critical and the community of interest requirement lose(s) significance (67 Cal. 2d at 709)." In addition, the court noted that while Federal Rule 23(a) (see note 60 supra) required that common relief be sought, such relief had generally been interpreted to cover only those cases where the same type of relief, such as damages or an injunction, had been sought. See Harris v. Palm Springs Alpine, 329 F.2d 909, 915 (9th Cir. 1964); Kainz v. Anheuser-Busch, 194 F.2d 737, 741 (7th Cir. 1952); McGrath v. Tadayasu Abo, 186 F.2d 766, 770 (9th Cir. 1951); Weeks v. Bareco Oil, 125 F.2d 84, 88, 91 (7th Cir. 1941). The court then pointed to the fact that Federal Rule 23(a) had been

15

LEGISLATIVE INTENT SERVICE   (800) 666-1917

legislature to revise its class action statute to bring it in accordance with the amended federal rule. That point of view was recognized and accepted in all drafts of the new statute.

Section 1781(c) provides for a preliminary hearing on various consumer remedy questions. Ten days prior to the hearing notice must be given. The purpose of this section is to allow the court to inquire into the action at an early stage in the proceedings to determine whether the action is frivolous or amended to resolve other preliminary problems including the question of the propriety of a class action. Subsection (3) directs the court to determine if "the action is without merit or whether there is no defense to the action." However, the statute does not state what kind of orders the court is to make as a result of its findings. The reason for this void is that it would be difficult to conceive of the myriad of possible problems and express in statutory form the kind of disposition each would require. Federal Rule 23(c)[68] should be looked to for guidance in this situation. In making similar determinations the federal courts may issue orders which "may be conditional, and may be altered or amended before the decision on the merits."[69] It is recommended that the Consumers Legal Remedies Act be amended to make it clear that the courts applying it are free to make such preliminary, conditional and supplemental orders as are necessary to achieve fairness in any particular case.

Section 1781(d) of the Act allows the court to direct *either* party to notify the members of the class of the action. Publication is allowed if personal notification would be impracticable or unreasonably expensive. The reference to expense was amended into the measure so that a representative of a large class would not have to bear the entire burden and expense of notifying each member of the class. If the result were otherwise, the burden could effectively destroy his ability to bring the action. In many if not most significant cases the defendant seller will be in possession of records which best enable him to identify and notify members of the class and the court should be guided accordingly.

No matter how carefully worded a statute may be drawn the notification procedure cannot be reduced to the point where serious due process questions will not arise. The courts should ensure that this problem does not become a major barrier effectively precluding class actions. In

---

amended in 1966 to eliminate the requirement for common relief. With these two considerations in mind, the court, by holding that Rule 23(d) was in "substantial correspondence" with the amended version of Federal Rule 23(d), was hardly subtle in implying that the California class action statute should be brought into formal accordance with the federal rule.

[68] Fed. R. Civ. P. 23(c).
[69] Id.

this context the court should consider the statement in section 1760 that the purpose of the Act is to protect consumers and provide them with "efficient and economical procedures to secure such protection."

The potential due process question inherent in any class action is not answered by this statute, nor is it fully considered in any California court decisions. Suppose the plaintiff does not succeed in a class action. What are the rights of a member of a class who has been notified personally; notified by publication; not notified in any manner? It would seem that due process would preclude the person notified personally from bringing a subsequent action and would require that the class member not notified in any manner be allowed to bring his own action.[71] But if the latter is the case, does the class litigation retain the res judicata effect?

Res judicata is the very essence of a class action.[72] That principal precludes subsequent actions by those persons whose right of recovery are based upon the same facts. Whether they were or can be notified would not seem to be relevant to the determination of whether or not the community of interest test places such persons in the class. If indeed they are found to be in the class any subsequent judgment is res judicata.[73] It is under these circumstances that the due process argument on the part of the member not notified, or notified by publication only, would arise. Although this argument has not yet been decided by any appellate court, its importance makes it clear that such a decision will have to be made in the near future.

The aspect of the Consumers Legal Remedies Act that is most unique is that section providing for the settlement of class actions based on the statute.[74] Such statutory settlement procedures are not found in similar proposals before Congress or the legislatures of any other state. Significantly, it is this aspect which cleared the way to ultimate passage of the Act. It is a by-product of the desire not to harass the honest businessman on the one hand and repeated assertions on the part of business representatives on the other that in the event the honest merchant has erred, he will, if given the opportunity, make the consumer whole. It was recognized that even the most corrupt merchant can exonerate himself under these provisions. That consideration, however, was

---

[71] The provisions for notice by publication are certain to raise significant questions of due process.
[72] The court in Daar v. Yellow Cab, 67 Cal. 2d 695 (1967), stated at 706: if we conclude that the instant complaint properly sets forth a class action, the judgment herein will be res judicata as to all persons to whom the common questions of law and fact pertain.
[73] Id.
[74] Cal. Civ. Code § 1782.

deemed secondary to the desire to provide the damaged consumer with relief in the quickest and most efficient manner possible. In construing the statute as it pertains to settlement, the courts once again must be cognizant of the consumer-oriented purpose of the Act.[75] These procedures, more than any others, must not be allowed to frustrate that purpose. The statute provides procedures for the settlement of both individual[76] and class actions.[77] In either type of action the individual or the representative plaintiff is required to notify the merchant of the alleged abuse at least 30 days prior to the commencement of a lawsuit, and to request that the merchant correct, repair, replace or otherwise rectify the goods or services sold or rendered in violation of the statute.[78]

In the case of an action other than a class action, the merchant is given 30 days from receipt of the notice to make an appropriate correction, repair or replacement, or otherwise remedy the wrong charged.[79] Cases can arise, however, where the appropriate correction cannot be accomplished within 30 days. An example would be a part replacement that must be made or specially ordered. In that case the merchant complies with the statutory requirement by entering into, within the 30 day period, an agreement to take the required correction "within a reasonable time."[80] If the merchant complies with the statute no action for damages may be further maintained by the consumer.

Subsections (a) (2) and (c) (3) of section 1782 each require an appropriate correction, repair, replacement or other remedy by the merchant if he is to avoid a lawsuit. In other words, if the merchant complies with the statutory requirements an action for damages is not allowed. Therefore, the court should equate the term "correction, repair, replacement or other remedy" with damages, since it is essentially a substitute for damages. The legislative intent is to make the consumer whole and in some cases that will require payment for incidental expenses in addition to the necessary correction or replacement. Furthermore, since some of the practices described in section 1770 are unlawful even without a final sale of goods or services,[81] the payment of monetary damages for wrongs arising out of deceptive practices might very well be the only appropriate remedy.

The provisions for settling class actions are found in section 1782(c). They provide that no action for damages may be maintained if the busi-

[75] Cal. Civ. Code § 1750.
[76] Cal. Civ. Code § 1782(b).
[77] Id. at § 1782(c).
[78] Id. at § 1782(a).
[79] Id. at § 1782(b).
[80] Id.
[81] See note 43 supra and accompanying text.

---

nessman can show the following:

(1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.

(2) All consumers so identified have been notified that upon their request such person shall make the appropriate correction, repair, replacement or other remedy of the goods and services.

(3) The correction, repair, replacement or other remedy requested by such consumers has been, or, in a reasonable time, shall be, given.

(4) Such person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, such person will, within a reasonable time, cease to engage, in such methods, acts, or practices.[82]

The most important point in connection with the settlement of class actions is that settlement with the named plaintiffs will not preclude them from further prosecuting the action on behalf of the remaining members of the class. Note that section 1782(c) precludes the further maintenance of the action only if all the described conditions are shown to exist. Those conditions require settlement with all reasonably identifiable members of the class. The term "maintained" in section 1782(c) was deliberately and carefully chosen just as the term "commenced" was deliberately avoided. The intent was to make certain that a person can commence a class action 30 days after he has made a demand on behalf of the class even if the merchant has offered to settle his particular claim in accordance with section 1782(b). An action so commenced may not be maintained, however, if the conditions for settlement with the class have been met. It is evident that construction of section 1782(c) so as to preclude a person from maintaining any action if his particular claim had been settled would destroy class actions under the statute. That most certainly was not the intent of the legislature.

Section 1782(c)(4) deserves special mention. It requires the person charged with a deceptive practice to show that he has ceased to engage in the practice "or if immediate cessation is impossible or unreasonably expensive under the circumstances, such person will, within a reasonable time, cease to engage" in such practices. It was recognized that some practices, though deceptive, cannot as a practical matter be stopped immediately. The example leading to the statutory language was that of a deceptive advertisement in a catalogue mailed by a mail order house to thousands or even millions of subscribers. The immediate printing and mailing of new catalogues would be both impossible

[82] Cal. Civ. Code § 1782(c).

and unreasonably expensive. The mailing of a letter describing the defect to all subscribers within a reasonable time, however, would satisfy the statutory requirement.

The statute also provides for an individual or class action for injunctive relief.[83] Such an action may be commenced without giving the 30 day notice required prior to the commencement of actions for damages. If the plaintiff later decides to seek damages instead of, or in addition to injunctive relief, the complaint can be amended to request damages. Such a request must be made not less than 30 days after the commencement of the action. After amendment the notification and appropriate settlement provisions apply depending on whether the action is or is not on behalf of a class. Again, if it is a class action, settlement with the named plaintiff will not preclude his further maintaining the action on behalf of the class until all the conditions for settling class actions are met.

Section 1783 places a limiting period on actions based upon the statute. With reference to class actions it was the legislative intent behind the Act to limit the class to those persons who had been damaged as a result of a deceptive practice within three years prior to the commencement of the action. The legislature felt that open-ended classes could be enormously damaging to a business in the event of an unfavorable judgment. Also, the limited class would make it unnecessary for the business to keep and store records of transactions beyond a three year period. Those considerations were thought to be reasonable enough to warrant the addition of a limiting period to the statute.

Section 1784 provides that no award of damages may be given (1) if the defendant proves that the violation was unintentional and (2) resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such errors, and provided also that (3) the appropriate remedy is given. The burden of proof in each instance is on the defendant. This section was added at the request of business representatives. It was accepted mainly because it reemphasized the settlement aspects of the Act and did not detract from the rights of the consumer under the statute. Note that the defendant must prove, in effect, that he acted neither intentionally nor negligently. Proof of "reasonable procedures adopted to avoid any such error"[84] would seem to require no negligence; the occurrence of an error is evidence on its face of the lack of reasonable preventive procedures.

The requirement for disproving intent is not to be construed as mak-

83 Cal. Civ. Code § 1782(d).
84 Cal. Civ. Code § 1784.

---

ing intent an element of any of the deceptive practices set forth in section 1770. It was intended that the mere occurrence of the unlawful practice be unlawful regardless of the state of mind of the merchant. Proof of the state of mind of a defendant is difficult and is in fact one of the major problems in proving fraud under existing law. The scienter requirement in the final analysis is what led to the new Act,[85] so it must under no circumstances be read into the statute.

As finally amended, the Act makes no provision for an award of attorney fees. The court may award fees if it can do so under specific provisions—statutory or otherwise—of existing law.[86] Suppose a plaintiff retains an attorney who files a class action and obtains a judgment resulting in the creation of a fund for the benefit of members of the class. It seems reasonable to expect that the attorney should be allowed a fee out of the fund. It is recommended, therefore, that the statute be amended to allow the court to order the payment of a reasonable fee under such circumstances. Suppose also that the filing of the class action results in prompt settlement under the terms of the statute by the defendant, but no fund is created. The attorney's efforts have resulted in a benefit being conferred upon the class. The statute should also be amended to make some provision for the award of a reasonable fee in that case.

## CONCLUSION

This discussion should make it clear that the passage of beneficial consumer legislation is a task requiring careful advance preparation, considered study of the problems of business, and a willingness to amend or compromise. The point of view of business must be especially emphasized, since some individuals and consumer groups tend to ignore those at whom a potential statute is directed. This approach to legislation has proven to be reasonable and is the one that is most likely to result in a sympathetic hearing by legislative committees. Most importantly, it is the only way significant legislation can be passed.

85 See note 13 supra and accompanying text.
86 Cal. Stats. 1970, c. 1550, § 2.

LEGISLATIVE INTENT SERVICE (800) 666-1917

# APPENDIX A

## CONSUMERS LEGAL REMEDIES ACT

### CHAPTER 1. GENERAL PROVISIONS

1750. This title may be cited as the Consumers Legal Remedies Act.

1751. Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void.

1752. The provisions of this title are not exclusive. The remedies provided for herein shall be in addition to any other procedures or remedies for any other wrong or harm provided for by applicable statutory or common law rights of the Attorney General or any other person to bring class actions. Class actions by consumers brought under the specific provisions of Chapter 3 (commencing with Section 1770) of this title shall be governed exclusively by the provisions of Chapter 4 (commencing with Section 1780).

1753. If any provision of this title or the application thereof to any person or circumstance is held to be unconstitutional, the remainder of the title and the application of such provision to other persons or circumstances shall not be affected thereby.

1754. The provisions of this title shall not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence or all or part of a structure designed for commercial or industrial occupancy, with or without a parcel of real property or an interest therein, or for the sale of a lot or parcel of real property, including any site preparation incidental to such sale.

1755. Nothing in this title shall apply to the owners or employees of any advertising medium, including, but not limited to, newspapers, magazines, broadcast stations, billboards and transit by whom any advertisement in violation of this title is published or disseminated, unless it is established that such owners or employees had knowledge of the deceptive methods, acts or practices declared unlawful by Section 1770.

1756. The substantive and procedural provisions of this title shall only apply to actions filed on or after January 1, 1971.

### CHAPTER 2. CONSTRUCTION AND DEFINITIONS

1760. This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

1761. As used in this title:

(a) "Goods" means tangible chattels bought for use primarily for personal, family or household purposes, including certificates or coupons exchangeable for such goods, and including goods which, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of such real property, whether or not severable therefrom.

(b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

(c) "Person" means an individual, partnership, corporation, association, or other group, however organized.

(d) "Consumer" means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes.

(e) "Transaction" means an agreement between a consumer and any other person, whether or not the agreement is an executed contract, by which the consumer acquires, by purchase or lease, goods or real property, whether or not severable therefrom, and includes the making of, and the performance pursuant to, that agreement.

### CHAPTER 3. DECEPTIVE PRACTICES

1770. The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(a) Passing off goods or services as those of another.

(b) Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(c) Misrepresenting the affiliation, connection, or association with, or certification by, another.

(d) Using deceptive representations or designations of geographic origin in connection with goods or services.

(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have.

(f) Representing that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand.

(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(h) Disparaging the goods, services, or business of another by false or misleading representation of fact.

(i) Advertising goods or services with intent not to sell them as advertised.

(j) Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

(k) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

(l) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

(m) Representing that a part, replacement, or repair service is needed when it is not.

(n) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

(o) Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

(p) Misrepresenting the authority of a salesman, representative, or agent to negotiate the final terms of a transaction with a consumer.

### CHAPTER 4. REMEDIES AND PROCEDURES

1780. (a) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain any of the following:

(1) Actual damages, but in no case shall the total award of damages in a class action be less than three hundred dollars ($300).

(2) An order enjoining such methods, acts, or practices.

(3) Restitution of property.

(4) Punitive damages.

(5) Any other relief which the court deems proper.

(b) Such action may be commenced in the county in which the person against whom it is brought resides, has his principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred.

If within any such county there is a municipal or justice court, having jurisdiction of the subject matter, established in the city and county or judicial district in which the person against whom the action is brought resides, has his principal place of business, or is doing business, or in which the transaction or any substantial portion thereof occurred, then such court is the proper court for the trial of such action. Otherwise, any municipal or justice court in such county having jurisdiction of the subject matter is the proper court for the trial thereof.

In any action subject to the provisions of this section, concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county or judicial district described in this section as a proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss any such action without prejudice.

1781. (a) Any consumer entitled to bring action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for, in Section 1780.

(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

(1) It is impracticable to bring all members of the class before the court.

(2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

(3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.

(4) The representative plaintiffs will fairly and adequately protect the interests of the class.

(c) If notice of the time and place of the hearing is served upon the other parties at least 10 days before the hearing, the court shall hold a hearing, upon motion of any party to the action which is supported by affidavit of any person having knowledge of the facts, to determine if any of the following apply to the action:

LEGISLATIVE INTENT SERVICE (800) 666-1917

*Pacific Law Journal / Vol. 2*

(1) A class action pursuant to subdivision (b) is proper.

(2) Published notice pursuant to subdivision (d) is necessary to adjudicate the claims of the class.

(3) The action is without merit or there is no defense to the action.

A motion based upon Section 437c of the Code of Civil Procedure shall not be granted if the action is commenced as a class action pursuant to subdivision (a).

(4) If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice may, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally, give notice as prescribed herein by published notice, newspaper, or combination of the following methods:

(1) The notice required by subdivision (d) shall include the following:

(2) The court will exclude the member notified from the class if he so requests by a specified date.

(3) The judgment, whether favorable or not, will include all members who do not request exclusion.

(4) Any member who does not request exclusion, may, if he desires, enter an appearance through counsel.

(f) A class action shall not be dismissed, settled, or compromised without the approval of the court, and notice of the proposed dismissal, settlement, or compromise shall be given in such manner as the court directs to each member who was given notice pursuant to subdivision (d) and did not request exclusion.

(g) The judgment in a class action shall describe those to whom the notice was directed and who have not requested exclusion and those the court finds to be members of the class. The best possible notice of the judgment shall be made by certified mail within 30 days after receipt of such judgment by mail or personally served with notice pursuant to subdivision (d) and did not request exclusion.

1782. (a) Thirty days or more prior to the commencement of an action for damages under the provisions of this title, the consumer shall do the following:

(1) Notify the person alleged to have employed or committed methods, acts or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.

(2) Demand that such person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Such notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred, such person's principal place of business within California, or, if neither will effect actual notice, the office of the Secretary of State.

(b) Except as provided in subdivision (c), no action for damages may be maintained under the provisions of Section 1780 if an appropriate correction, repair, replacement or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of such notice.

(c) No action for damages may be maintained under the provisions of Section 1781 upon a showing by a person alleged to have employed or committed methods, acts or practices declared unlawful by Section 1770 that all of the following exist:

(1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.

(2) All consumers so identified have been notified that upon their request such person has been, or is, prepared to offer the appropriate correction, repair, replacement or other remedy of the goods and services.

(3) The correction, repair, replacement or other remedy requested by such consumers has been, or, in a reasonable time, shall be given.

(4) Such person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, such person will, within a reasonable time, cease to engage, in such methods, act, or practices.

An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with the provisions of subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with the provisions of subdivision (a), the consumer may amend his complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

(d) Attempts to comply with the provisions of this section by a person receiving a demand shall be construed to be an offer to compromise and shall be inadmissible as evidence pursuant to Section 1152 of the Evidence Code; furthermore, such attempts to comply with a demand shall not be considered an admission of engaging in an act of

---

---

*1971 / Consumer Legislation*

practice declared unlawful by Section 1770. Evidence of compliance or attempts to comply with the provisions of this section may be introduced by a defendant for the purpose of establishing good faith or to show compliance with the provisions of this section.

1783. Any action brought under the specific provisions of Section 1770 shall be commenced not more than three years from the date of the commission of such method, act, or practice.

1784. No award of damages may be given in any action based on a method, act, or practice declared to be unlawful by Section 1770 if any person alleged to have employed or committed such method, act, or practice (a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services according to the provisions of subdivisions (b) and (c) of Section 1782.

## Section 2

Nothing in this act shall be construed to prevent the court from awarding attorney's fees pursuant to specific provisions of existing law.

## APPENDIX B

The following is a report given by Assemblyman J. A. Hayes to the California Assembly on September 23, 1970, that explains the meaning of the deceptive practices as set forth in Section 1770 of the Act:

The Uniform Deceptive Legal Remedies Act is designed to provide affirmative remedies for consumers which will protect them from unscrupulous business practices as well as providing the consumer a lawsuit for spurious or vexatious lawsuits. This is done by providing the consumer a lawsuit for fraudulent or vexatious lawsuits. This is done by prescribing practices to rescind unfair business transactions, collect damages, and stop future bad practices.

Section 1770 of the Civil Code provides sixteen specific practices outlawed by the Act. By way of illustration and not limitation the following are examples of violations of each subdivision of Section 1770:

a. Selling a product being made by Y when it is really made by X. Although passing off a product being made by Y when it is really made by X. Although passing off originally denominated unauthorized use of trade identification, today the term is also applied to convert substitution of a different brand of goods for the brand requested by a customer. Coca-Cola Co. v. Foods, Inc., 220 F. Supp. 101.

b. There exists, today, an industry-wide system of trade terminology with consumer of trade terminology has developed technology which has, in conjunction with consumer of trade terminology has the tendency to suggest that a system of quality standards or grading does in fact exist. Typical of such terminology are the expressions "super", "supreme". The consumer usually does not understand the significance of the accepted or quality standards and is likely to assume that these expressions connote a valid criteria. Since a consumer may misinterpret the terminology, he may be deceived into buying a more inferior product because it has been given such designation.

c. Representing that a product, such as tires, has the approval of Parnelli Jones, or that someone like Mario Andretti always uses brand X tires when he doesn't.

In Vasser v. Maren, 214 Cal App 2d. 249 defendant opened up a competing florist shop with the same name as plaintiff's as plaintiff's former location after the latter had moved across the street.

d. Selling a camera as being made in Japan when it is really made in Taiwan. Or perfume concentrate imported from France and combined in the U.S. with domestic alcohol may not be sold as imported perfume. Distributors, Inc. v. FTC, 263 Fed. 396.

e. This section would be violated by, among others, an individual or firm that sold meets those standards. Actually representing that there is an industry wide standard of grading tires when there isn't, and selling tires that are used or approved by Parnelli Jones or Mario Andretti would also be violations.

---

LEGISLATIVE INTENT SERVICE   (800) 666-1917

f. It would be a deceptive practice for a salesman to fail to disclose that products are reprocessed even though the reprocessed products are as good as new. FTC v. Colgate Palmolive, 85 S. Ct. 1035.

g. A violation of this section would be an advertisement representing that bread sold under trademark "Lite Diet" was a low calorie good when in fact it contained the same number of calories as other white bread but had thinner slices.

h. False assertions as to a product's inferiority.

i. To lure consumers into a store, an advertisement will offer a product at a very low price, but the seller will intend to only sell one or two of the offered product. An appliance store will offer to sell a T.V. at $100 less than its regular retail price, but will only offer five or two T.V. sets.

k. This subsection applies to spurious "fire" and "liquidation" sales as well as to fictitious price cuts, i.e., "Prices are slashed due to impending bankruptcy."

l. In this case the subsection would be violated if the seller advertised "satisfaction or your money back" or "10-day free trial" as they are usually construed as a guaranty that the full purchase price will be refunded. Any conditions to the contrary should be set forth.

m. Self-explanatory.

Protect the innocent consumer from the unscrupulous business of repairmen. Recommending that new brakes are needed, or that a new battery is needed when they are not.

n. A seller would be in violation of this subsection by selling a different product than the one advertised. The seller sells the regulation model rather than the luxury model advertised.

o. The consumer, in this instance, might be required to buy an additional product before he could receive the advertised discount, or that he buy a more expensive and higher quality appliance than the one advertised.

p. The prime example of a violation of this subsection is the car salesman who negotiates a deal, but before the contract can be signed, he tells the consumer that "his boss" won't let him sell the car at such a low price, so new adjustments must be made.

Jurisdiction of the Superior Court. Assuming a case and controversy within the jurisdiction of the Superior Court, Section 1780 is not intended to be construed to limit the plaintiff's choice of courts. That is, an action may be commenced under the provisions of the Consumers Legal Remedies Act in the Superior Court.

Statute of Limitations. Section 1783 provides that no action may be commenced more than three years after the commission of the allegedly wrongful method, act or practice. The statute applies to individual and class actions. In order to be included within the class, the Legislature intended that each member of the class would have been injured by violation of the Consumers Legal Remedies Act. Thus, if A is damaged in 1965, and B,C,D,E,F, and G are injured in 1968, class action may be commenced in 1970 but A cannot be included within the class.

The Consumers Legal Remedies Act has charted a new course for protection of the consumer. The Act is one of a series of legislative proposals aimed at substantive and procedural provisions of the measure. The Legislature therefore anticipates controversy and debate will attend application of the measure during the oncoming months. This in mind, Section 1760 was included in the bill to give jurists and advocates an insight into the legislative intent underlying the Consumers Legal Remedies Act. Simply, the Title should be construed liberally to promote the objective of efficient and economic protection against unfair and deceptive business practices.

It should be noted in passing that these examples were prepared "by way of illustration and not limitation."

# Franchise Investment Law

FRANKLIN L. DAMON*

*As an increasingly popular type of business format, franchising has troubled legislators in recent years for want of a system to safeguard individual interests without infringing upon the right to engage in bona fide business risks. California has attempted to solve this problem by passing the Franchise Investment Law to provide for knowledgeable bargaining positions on the part of both the franchisee and the franchisor. The author was the Senate coordinator of the Law which was drafted by the Corporations Commission in conjunction with the Attorney General. This article reviews the purpose of the Law and the legislative intent of its provisions for regulation of transactions concerning franchise agreements.*

The California Legislature, as a result of intensive study,[1] has enacted the first regulatory provisions in the field of franchise transactions[2] to be adopted by any state legislature in the United States.[3]

* A.B., U.C.L.A.; J.D. University of San Diego School of Law; Consultant to California State Senate Committee on Insurance and Financial Institutions.

1 Franchise legislation was initiated with the introduction of Senate Resolution 196, on July 8, 1969. That resolution provided the basis for the *Interim Hearing on Franchises* [hereinafter cited as *Interim Hearings*], before the Senate Insurance and Financial Institutions Committee, November 7, 1969 [hereinafter referred to as the Committee].

2 Senate Resolution 196, 1969 Regular Session. A contemporaneous definition is:

Franchising . . . is a modern form and method of doing business; a technique of distribution adopted by and used in many varied industries; a technique of integrating into the distribution system by contract instead of by centrally controlled chain ownership.

J. Fels, *Franchising: Legal Problems and the Business Framework of Reference—An Overview*, BUSINESS AND LEGAL PROBLEMS OF THE FRANCHISE, PRACTISING LAW INSTITUTE 9 (1968).

3 The only legal authority concerning the regulation of franchise offerings in



LEGISLATIVE INTENT SERVICE (800) 666-1917

EXHIBIT C

ASSEMBLY COMMITTEE ON JUDICIARY

JAMES A. HAYES, CHAIRMAN

AB 292 amended

#1550

AB 292 (Hayes) as amended

Explanation of Amendments in Final

Amended Version of Bill

1.  The amendments to section 1752 are not substantive.  They make
it clear that the class action provisions in the bill are in
addition to others already in the law.

2.  Section 1755 is added to exempt newspapers and other media
from liability for deceptive advertisements carried without knowledge
of their deceptive nature.

3.  The amendments to sections 1770 (b), (c) and (p) substitute
better and more precise language.

4.  Section 1782 is added to provide that, prior to filing a
suit for damages, the consumer must give the merchant an opportunity
to correct his mistake.  Injunctions may be filed without prior
notice.  However, notice must be given by all named plaintiffs if
a suit for injunction is amended to seek damages.

In a class action, notice by the named plaintiffs and a subse-
quent correction pursuant to their demands will not preclude them
from maintaining the action on behalf of other members of the class.
If it were otherwise, the class action provisions of the bill would
be emasculated and consumers would be left with fewer remedies than
they now have.

5.  The statute of limitations in section 1783(a) has been changed
from six months to conform to the general text statute.  1783(b)
provides that to be in a "class" a person must have been wronged

(800) 666-1917

LEGISLATIVE INTENT SERVICE



**LIS-3b**

-2-

within two years prior to commencement of the action.  This will avoid the very substantial problems a large retail enterprise might have in keeping records and tracking down consumers who might have been wronged many years in the past.

6.  The section which allowed a seller to avoid all liability if he could show an unintentional and bona fide error has been amended to allow him only to seek mitigation of damages on that basis.  Consumers argue that this in effect gives the businessman a "free bite", something not available to the consumer.

LEGISLATIVE INTENT SERVICE      (800) 666-1917



5/18/70

26

EXHIBIT D

27

AB 292 (Hayes, Fenton)                        8/70
As Amended 7-10
Civ. C.                                              A
                                                     B
### Consumers Legal Remedies Act

#### HISTORY                                         2
                                                     9
Source:  Author                                      2

Establishs various causes of action re deceptive
practices some of which are based on intentional
conduct and others on negligent conduct or strict
liability.  Provides defense to damages for
unintentional under new Sec. 1784 in certain
cases.

    Creates new class action procedures where a
person can be notified of action and be bound by
judgment unless he affirmatively withdraws.

    Comment:  1.  It is unclear to what extent
Sec. 1781(d) would or would not bar a plaintiff
who had notice and did not withdraw from pursuing
existing remedies.
        a.  Is it author's intent to bind a
member of the class as to whom only published
notice has been given?

    2.  Under Sec. 1751 (anti-waiver) is it
intended that all provisions of the act are non
waivable, what if consumer uses goods with knowledge
of the deceptive practice?  Or where consumer
discovers the deceptive practice before delivery
of the goods or services?

    3.  As to Sec. 1755, how does this section
affect the law of libel?

    4.  As to Sec. 1781(c), a motion to determine
whether suit is meritorious is substituted for
summary judgment procedure, is concept of "merit"
sufficiently defined in the law for this to be
workable?

                    -more-

(800) 666-1917

LEGISLATIVE INTENT SERVICE



**LIS-4a**

Page 2
AB 292 (Hayes, Fenton)

5.  Sec. 1780(b) adds venue and sub-venue provisions, will language re "substantial portion" of the transaction cause unnecessary litigation?

6.  Could still award punitive damages for non-intentional conduct if a correction or repair has not been made - see new 1784.

PURPOSE

Adds Title 1.5 (commencing with Sec. 1750) enacting the Consumers Legal Remedies Act providing consumers with remedies against merchants employing various deceptive practices in connection with the sale of goods or services.

Ch. 1 General Provisions

Sec. 1754 provides that the act does not involve transactions involving real estate.

Sec. 1755 exempts newspapers and other media from liability for deceptive advertisements carried without knowledge of their deceptive nature.

Ch. 2 Construction and Definitions

Defines the terms, "Goods", "Services", "Person", "Consumer" and "Transaction".

Ch. 3 Deceptive Practices

Lists the various deceptive practices for which remedies are made available.

Ch. 4 Remedies and Procedures

Sec. 1780 sets forth the remedies available to a deceived consumer.  Such remedies include actual and punitive damages, injunctive relief and and other relief the court may deem proper. Specifies that in a class action an award of damages may not be less $300.

-more-

(800) 666-1917

LEGISLATIVE INTENT SERVICE

Page 3
AB 292 (Hayes, Fenton)

Sec. 1781 makes a class actions available
and details the requirements for combining a class.
Subsection (c) provides for a preliminary hearing
on the issue of the propriety of a class action in
each particular case.

Sec. 1782 provides that prior to filing a
suit for damages, the consumer must give the
merchant an opportunity to correct his mistake.

Sec. 1783(a) provides that the statute of
limitations shall be three years from the commission
of the act.

Sec. 1783(b) provides that to be in a "class"
a person must have been wronged within two years
prior to commencement of the action.

Sec. 1784 bars damages if defendant proves
nonintentional violation, etc. and makes correction
etc.

––––––––

LEGISLATIVE INTENT SERVICE   (800) 666-1917

30