United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TRABAKOOLAS and SHEILA STETSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WATTS WATER TECHNOLOGIES, INC., WATTS REGULATOR CO., WATTS ANDERSON-BARROWS METAL CORP., WATTS PLUMBING TECHNOLOGIES (TAIZHO) CO., LTD., SAVARD PLUMBING COMPANY, WOLVERINE BRASS, INC., and JOHN DOES 1-100,<br><br>Defendants. | Case No.: 12-cv-01172-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION TO DISMISS SECOND AND FIFTH CAUSES OF ACTION, OR IN THE ALTERNATIVE, STRIKE CERTAIN ALLEGATIONS** |

On March 28, 2012, Plaintiffs Jason Trabakoolas and Sheila Stetson, on behalf of themselves and others similarly situated, filed this action against Defendants: Watts Water Technologies, Inc.; Watts Regulator Co.; Watts Anderson-Barrows Metal Corp.; Watts Plumbing Technologies (TAIZHO) Co., LTD.; Savard Plumbing Co.; and Wolverine Brass, Inc. (Dkt. No. 1.) On April 26, 2012, Defendants Watts Regulator Co., Watts Water Technologies, Inc., and Wolverine Brass, Inc.[1] filed an Amended Motion to Dismiss Second and Fifth Causes of Action, or in the Alternative, Strike Certain Allegations. (Dkt. No. 44 ("Motion" or "Mot.").) Defendants seek dismissal of two of Plaintiffs' six claims: the second claim for Strict Liability-Design Defect/Manufacturing Defect and Failure to Warn; and the fifth claim for Violation of the California Consumer Legal Remedies Act

---

[1] References to "Defendants" in this Order refer to these moving defendants.

(Cal. Civ. Code § 1750 *et seq.*) ("CLRA"). As to the second claim, although Defendants argue only that the manufacturing defect claim was pled inadequately, they seek dismissal of the entire second claim—including the design defect and warning defect claims. In the alternative to dismissing the entire second claim, Defendants move to strike all language referring to a "manufacturing defect."[2] On May 10, 2012, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss the Complaint. (Dkt. No. 46 ("Opposition" or "Opp.").) On May 17, 2012, Defendants filed their Reply in Support of Motion to Dismiss Second and Fifth Causes of Action, or in the Alternative, Strike Certain Allegations. (Dkt. No. 48 ("Reply").) The Court held oral argument on June 5, 2012. (Dkt. No. 49.) On June 6, 2012, the Court issued an Order Requiring Additional Briefing Regarding Motion to Dismiss, specifically on the issue of whether Plaintiffs' demand for replacement of the allegedly defective part is properly characterized as "damages" or "injunctive relief" under the CLRA. (Dkt. No. 50.) The parties provided the supplemental briefing to the Court as requested. (Dkt. Nos. 51 ("Plaintiffs' Supp. Brief") & 52 ("Defendants' Supp. Brief").)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby:

- **GRANTS** the Motion to Dismiss as to the second claim **WITH LEAVE TO AMEND** and **DENIES** the Motion to Strike as moot; and
- **GRANTS WITH LEAVE TO AMEND** the Motion to Dismiss as to the fifth claim.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**[3]

Plaintiffs' Complaint contains six claims, but only two are relevant to this Motion: the second claim for Strict Liability-Design Defect/Manufacturing Defect and Failure to Warn ("Defect Claim"), and the fifth claim, for Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA Claim"). (Dkt. No. 1 ("Compl.") ¶¶ 99–106, 128–139.) Plaintiffs' second claim incorporates all three types of strict products liability: design defect, manufacturing defect, and

---

[2] This Order uses the term "Motion to Strike" to refer to Defendants' alternative request, even though a separate motion to strike was not made.

[3] Because the pending Motion addresses only certain claims and issues, the following section is not intended to provide an exhaustive summary of the factual or procedural background in this action.

2

warning defect. *Id.* ¶¶ 99–106. Design defect and manufacturing defect are pled in the alternative. *Id.* ¶ 101.

This case arises from alleged defects in certain toilet connectors ("Connectors") which Defendants design and manufacture. *Id.* ¶ 1. These Connectors use plastic coupling assemblies to connect a water fixture shut-off valve to a toilet. *Id.* ¶ 26. Plaintiffs allege the plastic nuts used to secure the couplings are defective in a number of respects, but assert a manufacturing defect claim with respect to only *one defect*: "material selection/notch sensitivity." *Id.* ¶ 35; Opp. at 4. Plaintiffs contend the plastic used to manufacture the plastic nuts is defective and prone to notching, making the plastic couplings prone to fracture spontaneously resulting in catastrophic water damage. Compl. ¶¶ 25, 36–41. Plaintiffs purchased and installed the Connectors at issue and each suffered such fractures, resulting in the flooding of Plaintiffs' respective homes. *Id.* ¶¶ 11, 15. On this basis, Plaintiffs make a claim for design defect or, in the alternative, manufacturing defect. They further allege that Defendants violated the CLRA by intentionally and falsely representing the quality and benefits of their products. *Id.* ¶ 131.

Defendants filed the instant Motion on April 26, 2012, seeking dismissal of the Defect and CLRA Claims under Fed. R. Civ. P. 12(b)(6). In the alternative to dismissing the Defect Claim, Defendants moved under Fed. R. Civ. P. 12(f) to strike all language referring to manufacturing defects. In the hearing on this Motion, Plaintiffs conceded that, at this time, they have no specific facts to support a manufacturing defect claim.

**II.  DISCUSSION**

**A.  Legal Standard under Federal Rule of Civil Procedure 12(b)(6) and 12(f)**

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th

1 Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly*
2 *Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

3 Mere conclusions couched in factual allegations are not sufficient to state a cause of action.
4 *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802,
5 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim [for] relief that is
6 plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). A
7 claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw
8 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,*
9 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss,
10 the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly
11 suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969
12 (9th Cir. 2009); *Twombly*, 550 U.S. at 555 (a plaintiff's obligation to provide the grounds of his
13 entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the
14 elements of a cause of action will not do") (citations and quotations omitted). Courts may dismiss a
15 case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v.*
16 *Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

17 Fed. R. Civ. P. 12(f) provides that the court "may order stricken from any pleading any
18 insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The
19 function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that
20 must arise from litigating spurious issues by dispensing with those issues prior to trial[.]"
21 *Whittlestone Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v.*
22 *Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike are generally disfavored. *Colaprico*
23 *v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). Consequently, when a court
24 considers a motion to strike, it "must view the pleading in a light most favorable to the pleading
25 party." *In re 2TheMart.com, Inc. Sec Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2010). In deciding
26 whether to grant a motion to strike under Rule 12(f), the court must start with the rule's plain
27 language and determine whether the matter at issue is: (1) an insufficient defense; (2) redundant;
28 (3) immaterial; (4) impertinent; or (5) scandalous. *Id.* at 973–74.

4

**B.     Defect Claim**

While California recognizes three distinct theories of strict liability in instances of product defects (*Brown v. Superior Court*, 44 Cal. 3d 1049, 1057 (1988)), only two are relevant to this Motion.  A design defect is present when a product "fail[s] to perform as safely as an ordinary consumer would expect when used as intended or reasonably foreseeable, or if, on balance, the risk of danger inherent in the challenged design outweighs the benefits of the design." *Id.*  Under a manufacturing defect theory, a manufacturer may be strictly liable when a flaw in the manufacturing process results in a product that differs from "the manufacturer's intended result or from other ostensibly identical units of the same product line." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1154–55 (E.D. Cal. 2010) (quoting *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978)).

Defendants contend that the Complaint's allegations fail to establish a basis for a manufacturing defect claim because the allegations only concern the Connectors' effectiveness, *i.e.* their design.  Mot. at 3–5.  The complaint is devoid of allegations that the product failed because it was not manufactured as intended.  Plaintiffs respond with two arguments.  First, they contend that Fed. R. Civ. P. 8(d)(3) precludes dismissal of the manufacturing defect claim because it was pled in the alternative to a legally sufficient design defect claim.[4]  Opp. at 6.  Plaintiffs thus interpret Rule 8(d)(3) to preclude dismissal of a claim that it is pled in the alternative to another, legally sufficient claim.[5]  *Id.*  Second, they argue that Defendants have attempted to draw an artificial line in the pleading standards for manufacturing and design defect claims.  *Id.*  Plaintiffs concede they lack information of a manufacturing defect but argue that both claims should remain given that the nature of the defect is within Defendants' "exclusive" knowledge.  *Id.*

**1.     Motion to Dismiss Second Claim**

To survive a challenge to a manufacturing defect claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must "*identify/explain how* the [product] either deviated from [defendant's] intended

---

[4] At the hearing on this Motion, Defendants conceded the legal sufficiency of the design defect claim.

[5] Fed. R. Civ. P. 8(d) states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).  The rule continues that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

5

result/design or *how* the [product] deviated from other seemingly identical [product] models." *Lucas*, 726 F. Supp. 2d at 1155 (citing *Barker*, 20 Cal. 3d at 429) (emphasis in original). "A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liab. Litig.*, 754 F. Supp. 2d 1208, 1222 (C.D. Cal. 2010) (citing *Barker*, 20 Cal. 3d at 429).

Plaintiffs' arguments are untenable in light of these requirements. In support of their manufacturing defect claim, Plaintiffs point only to Defendants' "select[ion] [of] a low-grade [plastic] for the coupling's material" and the manner in which threading was cut into the sidewall of the plastic nuts. Compl. ¶¶ 36–41. As a result of this confluence, they allege, the plastic nuts are prone to fracturing during routine installation. *Id.* ¶ 41. However, Plaintiffs have not articulated how the material selection, the threading, or the propensity for failure distinguish the toilet connectors at issue from either the manufacturer's intended result or other seemingly identical product models. Instead, Plaintiffs make only conclusory allegations, such as "[i]n using this plastic, Defendants' design, manufacture, testing and assembly [were defective]." *Id.* ¶ 37.

In *In re Toyota*, the plaintiffs similarly alleged that "ETCS systems . . . were defectively designed and manufactured in that they were highly susceptible to malfunction . . . [and] failed to conform with [Toyota's] manufacturing specifications." *In re Toyota*, 754 F. Supp. 2d at 1222 (emphasis omitted). In that case, the court found it dispositive that plaintiffs failed to allege *how* the cars at issue deviated from Toyota's design or other product models. *Id.* at 1223; *see also Lucas*, 726 F. Supp. 2d at 1155 (dismissing a manufacturing defect claim because the complaint contained no factual allegations identifying what aspect of manufacture made the product defective). Plaintiffs have thus provided only the insufficient legal conclusion that "the [product] had a manufacturing defect" and have failed to allege a legally sufficient manufacturing defect claim. *In re Toyota*, 754 F. Supp. 2d at 1222 (internal quotation omitted).[6]

The Court therefore **DISMISSES** Plaintiffs' second claim **WITH LEAVE TO AMEND** and re-plead the second claim without the manufacturing defect claim. Plaintiffs may file a motion for leave to

---

[6] This is not an instance of pleading alternative statements *of a claim* under Rule 8(d). Plaintiffs attempt to plead two alternative claims with one set of facts, but, in this case, the facts are sufficient to allege only design defect, not manufacturing defect.

6

1 amend to re-plead their manufacturing defect claim when and if they obtain discovery providing a
2 factual basis for such claim.

### 2. Motion to Strike Allegations Regarding Manufacturing Defect

Defendants' Motion to Strike allegations regarding manufacturing defects is **DENIED** as moot.

### C. The CLRA Claim

The second issue before the Court is whether the CLRA Claim should be dismissed for failure to comply with the pre-filing notice requirement. To make this determination, the Court must evaluate whether Plaintiffs' request that the Court order the replacement of all Connectors constitutes "actual damages" or "injunctive relief" under the CLRA.

The Court's analysis begins "where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *In re Google Inc. Street View Electronic Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1074–75 (N.D. Cal. 2011). Where the language of the statute is plain, it is also where the inquiry should end: "the sole function of the courts is to enforce [the statute] according to its terms," assuming that an absurd interpretation does not result. *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). If the language is ambiguous, a court may then turn to the legislative history to assist in the interpretation. *S.E.C. v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003).

The California Consumer Legal Remedies Act prohibits, *inter alia*, misrepresentations regarding (i) the characteristics, uses, or benefits of products and services, and (ii) the particular standard, quality, or grade of goods. Cal. Civ. Code §§ 1770(a)(5) & (a)(7). California Civil Code section 1780(a) enumerates the types of relief available to plaintiffs in response to violations of section 1770 as follows: "(1) Actual damages . . .[;] (2) An order enjoining the methods, acts, or practices[;] (3) Restitution of property[;] (4) Punitive damages[; and] (5) Any other relief that the court deems proper." Cal. Civ. Code §§ 1780(a)(1)–(5). The CLRA also requires pre-filing notice before a plaintiff can seek damages in court. It provides:

>
> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
> (1) Notify the person alleged to have employed or committed the methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Section 1782(a). Despite the foregoing, section 1782(d) provides that actions seeking only injunctive relief require no such notice and may be amended later, under certain circumstances, to include a damages claim:

> (d) An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

Here, Plaintiffs request "an order for declaratory, equitable and/or injunctive relief prohibiting Defendants from engaging in the methods, acts, or practices alleged herein and . . . *[an] order [requiring] Defendants to replace all of the defective Toilet Connectors previously sold.*" Compl. ¶ 138 (emphasis supplied). Plaintiffs argue that this replacement request plainly seeks only injunctive relief. Opp. at 7; Plaintiffs' Supp. Brief at 3. Defendants contend the contrary. Mot. at 6. Defendants urge the Court to dismiss Plaintiffs' CLRA Claim for failure to provide the requisite notice under section 1782(a). *Id.* at 5–7.

The Court looks first to the language of the CLRA. The notice requirement of section 1782(a) explicitly requires a plaintiff to demand that a defendant "correct, repair, replace, or otherwise rectify" the alleged wrongdoing before bringing suit. If such rectification is made—for example, if a replacement is given—then an action for damages will not lie. Cal. Civ. Code § 1782(b). By creating this framework, the Legislature effectively made replacements a substitute for damages in CLRA actions.[7] The language of section 1782(a) is plain and unambiguous.

---

[7] James S. Reed, a former chief counsel of the assembly judiciary committee who served as a draftsman of the CLRA, has voiced this same conclusion. James S. Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act*, 2 Pac. L.J. 1, 18 (1971) ("[T]he court should equate the term 'correction, repair, replacement or other remedy' with damages, since it is essentially a substitute for damages."), attached as Ex. B to Defendants' Supp. Brief (Dkt. No. 52).

8

By contrast, section 1782(d) regarding injunctive relief is not defined specifically. California courts have expounded on the nature thereof, articulating that it is not meant "to resolve a private dispute but to remedy a public wrong. Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered." *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1080 (1999)[8]; *see America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 16 (Cal. Ct. App. 2001).

Here, Plaintiffs' request for injunctive relief is both prospective and retrospective, with both private and public characteristics. The prospective request relates only to an ongoing prohibition from "engaging in the methods, acts, or practices alleged herein." In this context, it legitimately seeks to protect the general public from future deceptive practices. However, the second portion—"to replace all of the defective Toilet Connectors previously sold"—seeks to remedy prior damage incurred by those who have suffered damage due to Defendants' allegedly faulty Connectors. Such an order would *not* protect the general public from the allegedly wrongful practices at issue but requires the Court to evaluate retrospectively what Defendants did and order action specifically related to prior damage. *See Broughton*, 21 Cal. 4th at 1079–80 (a plaintiff seeking CLRA injunctive relief functions as a "private attorney general, enjoining *future* deceptive practices on behalf of the general public") (emphasis supplied). Thus, "replacement" as a remedy falls squarely within the context of the provision requiring notice. To find otherwise would not only require the Court to ignore the plain language of section 1780(a)(2), but to ignore the stated purpose and intent of section 1782. *Id.* at 1085 ("These differing approaches to actions for damages and for injunctive relief reflect the differing

---

[8] In *Broughton*, defendants sought an order compelling plaintiffs' CLRA claims for damages and injunction to arbitration. The California Supreme Court granted in part, severing the damage and injunction claims and sending only the damage claim to arbitration. In the wake of *Concepcion v. AT&T*, -- U.S. --, 131 S. Ct. 1740 (2011), the Ninth Circuit abrogated *Broughton* in *Kilgore v. KeyBank, Nat. Ass'n*, 674 F.3d 947 (9th Cir. 2012) to hold that the entire CLRA claim (for damages and injunctive relief) could be sent to arbitration. However, *Kilgore* retained the distinction between public injunctive relief and damages, and other district courts have continued to discuss CLRA injunctive relief in terms of "public injunctive" relief post-*Concepcion*. *See, e.g.*, *Nelson v. AT&T Mobility, LLC*, No. C10-4802 THE, 2011 WL 3651153, at *1 (C.D. Cal. Oct. 6, 2011) ("Public injunctive relief claims are designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff") (internal citation and quotation omitted).

purposes of the two actions. The former is primarily to remedy individual wrongs . . . [and] [t]he latter is for the protection of the public.").

For these reasons, the Court holds that for purposes of CLRA, Plaintiffs' request for replacements to constitute a request for damages under section 1782(a), not injunctive relief under section 1782(d). Because Plaintiffs filed suit requesting damages without providing the requisite 30-day notice, their CLRA Claim for damages must be dismissed. *See* Cal. Civ. Code § 1782(a).

A significant split among the courts exists on whether dismissal of a CLRA claim for violation of section 1782(a)'s notice requirement should be granted with or without prejudice. *Compare, e.g.*, *Morgan v. AT&T Wireless Servs.*, 177 Cal. App. 4th 1235, 1259–61 (Cal. Ct. App. 2009) (dismissing without prejudice) *and Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902, at *5–6 (N.D. Cal. Dec. 21, 2006) (dismissing without prejudice) *with Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949–50 (S.D. Cal. 2007) (dismissing with prejudice) *and Waller v. Hewlett-Packard Co.*, No. 11cv0454-LAB (RBB), 2011 WL 6325972, at *5–6 (S.D. Cal. Dec. 16, 2011) (dismissing with prejudice). The statute itself is silent.

The leading cases for dismissing with prejudice are *Cattie v. Wal-Mart Stores, Inc.* and *Laster v. T-Mobile USA, Inc.*, No. 05cv1167 DMS (AJB), 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *rev'd on other grounds by AT&T Mobility LLC v. Concepcion*, -- U.S. --, 131 S. Ct. 1740 (2011). In each case, the court relied on the reasoning of *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40–41 (Cal. Ct. App. 1975). In *Outboard Marine*, the court stated:

> The purpose of the notice requirement of section 1782 is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements. . . . The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. This clear purpose may only be accomplished by a literal application of the notice provisions.

*Outboard Marine*, 52 Cal. App. 3d at 40–41. The courts reasoned that such a "literal application" required dismissal with prejudice.

The most oft-cited cases in support of dismissal without prejudice are *Morgan v. AT&T Wireless Servs.* and *Deitz v. Comcast Corp.* In *Morgan*, the court adopted *Outboard*'s understanding of the notice requirement's purpose, stating that the "requirement exists in order to allow a defendant

10

to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice." *Morgan*, 177 Cal. App. 4th at 1261. However, in contrast to *Cattie* and *Laster*, it held dismissal with prejudice to be unnecessary to meet that goal. "Instead [of being dismissed with prejudice], the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *Id.* In *Deitz*, the court reasoned that dismissing with prejudice would be draconian in light of the statute's provision for amending an action that initially seeks only injunctive relief, so long as the required thirty days run prior to amendment. *Deitz*, 2006 WL 3782902, at *5–6.

The Court looks to the statute's legislative history where the language is not clear and unambiguous. CLRA's legislative history indicates that it was enacted to assist unsophisticated consumers:

> QUESTION – Who will the Act benefit most?
>
> ANSWER – Low income or ghetto consumers. One of the most important points in the Report of the National Advisory Commission on Civil Disorders is that much resentment against the establishment found in ghetto areas is generated by unconscionable practices of merchants in business there.
> This bill will enable legal aid societies, district attorneys' consumer fraud units, and other legal assistance agencies to more easily combat unconscionable practices.

Assembly Comm. on Judiciary, Questions and Answers Regarding Assembly Bill No. 292 (1970 Reg. Sess.), attached as Ex. A to Defendants' Supp. Brief. The statute itself indicates that its "underlying purposes [are] to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Thus, the consumer, not the merchant, is of primary concern. *See also*, Reed, 2 Pac. L.J. at 8, attached as Ex. B to Defendants' Supp. Brief ("[T]he policy statement was intended as a concise guide to the interpretation and application of its many provisions. The message is clear—*when in doubt, decide in the consumers' favor*.") (emphasis in original).

Nothing in the legislative history indicates that the 30-day notice period was intended to bar consumer actions or was not curable. Under section 1782(d), the notice could be provided as a matter of right within 30 days of filing an action for injunctive relief: "the consumer may amend his or her complaint *without leave of court* to include a request for damages." (Emphasis supplied.) The corollary must therefore also exist, that is, that a court *may* grant leave at any later date. The

11

Legislature provided a 30-day window to resolve quickly and efficiently consumer complaints.  It inured to the consumers' benefit.  To interpret the statute in such a way as to convert that same provision into a sword against consumers would violate the fundamental principle upon which the Legislature enacted the CLRA.

Accordingly, the Court grants leave for Plaintiffs to provide notice under section 1782(d).  The CLRA Claim for damages is **DISMISSED WITHOUT PREJUDICE**.  The CLRA Claim remains intact to the extent that it seeks purely declarative and injunctive relief.

### III. CONCLUSION

For the foregoing reasons, the Court hereby:

- **GRANTS** the Motion to Dismiss as to Plaintiffs' second claim, **WITH LEAVE TO AMEND** and re-plead the second claim without any manufacturing defect claim.  This dismissal is **WITHOUT PREJUDICE** to Plaintiffs seeking leave to file an amended claim based upon manufacturing defect should they discover additional facts in support thereof;
- **GRANTS WITH LEAVE TO AMEND** the Motion to Dismiss as to the fifth claim.

Plaintiffs have **thirty-five (35) days** from the date of this Order to file a First Amended Complaint.  Thereafter, Defendants have **twenty-one (21) days** from the date of filing to respond.  This Order terminates Dkt. No. 44.

**IT IS SO ORDERED.**

Dated: July 9, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**