UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TRABAKOOLAS and SHEILA STETSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>WATTS WATER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No.: 12-cv-01172-YGR<br><br>**ORDER REGARDING PRIVILEGE DISPUTE INVOLVING COUNSEL FOR LIBERTY MUTUAL INSURANCE COMPANY** |

The Court has reviewed the parties' submissions regarding their dispute relating to conversations between Plaintiffs Jason Trabakoolas and Sheila Stetson and counsel for Liberty Mutual Insurance Company ("Liberty Mutual"). Plaintiffs assert that "[t]he communications involved legal advice with respect to the water damage to their respective properties caused by Defendants' failed [t]oilet [c]onnectors." (Plaintiffs' Brief Showing Cause Regarding Attorney-Client Communications ["Plaintiffs' Brief"] at 1 [Dkt. No. 112].) Defendants argue that Plaintiffs did not call the attorneys to seek legal advice or representation, and that Plaintiffs were "cold-called" for the purpose of soliciting named representatives for this action, which cannot create an attorney-client relationship. (Defendants' Brief on the Order to Show Cause Regarding Discovery of Communications with Plaintiffs' Insurance Company ["Defendants' Brief] at 1 [Dkt. No. 115].)

For the reasons set forth below, the Court finds that the communications at issue are not privileged and **ORDERS** Plaintiffs Trabakoolas and Stetson to re-appear for depositions not to exceed 45 minutes per person to answer questions regarding said communications with Liberty Mutual's counsel.

**I.   BACKGROUND**

Plaintiffs each suffered extensive water damage to their homes in 2011 when a toilet connector, allegedly manufactured by Defendants, failed. (First Amended Complaint ¶¶ 11–13 & 15–17 [Dkt. No. 69].) Plaintiffs each had an insurance contract with Liberty Mutual that covered aspects of water damage to their homes. (Plaintiffs' Brief at 2.) Liberty Mutual paid Plaintiffs' claims for water damage.[1] The insurance contract gave Liberty Mutual the right to investigate, evaluate, and determine whether to pursue a claim for subrogation for its insured losses. (Plaintiffs' Brief at 2.)

The Law Offices of Robert A. Stutman, P.C. ("Stutman Firm") represented Liberty Mutual during the relevant time period. (Defendants' Brief at 1.) The deposition testimony of both Plaintiffs indicate that the Stutman Firm initiated contact with them. (Stetson Dep. 7:8–8:1 & 8:24–9:15; Trabakoolas Dep. 112:23–113:5.) At the time of the conversations, Trabakoolas had not considered filing a lawsuit in connection with his water damage and had no interest in litigation (Trabakoolas Dep. 112:23–113:5 & 114:48–22) nor had Stetson sought to initiate a class action or litigation (Stetson Dep. 40:3–7). After speaking with the Stutman Firm, Jason Trabakoolas and Sheila Stetson became named plaintiffs in this products liability class action represented by Saltz Mongeluzzi Barret & Bendesky, PC ("Saltz Firm"). (Stetson Dep. 45:3–14; Trabakoolas Dep. 111:22–25 & 117:2–2.) Communications with the Saltz Firm are not at issue; only the communications with the Stutman Firm.

**II.   DISCUSSION**

    **A.   The Attorney-Client Privilege**

The elements for establishing the existence of an attorney-client privilege are: (1) a client (2) transmits confidential communications (3) to a lawyer (4) for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity. *Mitchell v. Superior Court*, 37 Cal. 3d 591, 600 (1984). A "client" is "a person who . . . consults a lawyer *for the purpose of*

---

[1] (Declaration of Todd Benoff in Support of Defendants' Brief on the Order to Show Cause Regarding Discovery of Communications with Plaintiffs' Insurance Company [Dkt. No. 115 & 115-1], Ex. A (Videotaped Deposition of Sheila A. Stetson ["Stetson Dep."]) 13:3–22) and Ex. C (Videotaped Deposition of Jason Trabakoolas ["Trabakoolas Dep."]) 112:8–14.)

2

*retaining the lawyer or securing legal service or advice* from him in his professional capacity." Cal. Evid. Code § 951 (emphasis supplied). A "confidential communication" is "information transmitted between a client and his or her lawyer in the course of that relationship." Cal. Evid. Code § 952. "It does not attach to a communication the client does not intend to be confidential." *Benge v. Superior Court*, 131 Cal. App. 3d 336, 346 (Cal. Ct. App. 1982).

While the holder of the privilege is the client (Cal. Evid. Code § 953), the attorney may be "prevent[ed] . . . from disclosing[] a confidential communication between client and lawyer" if the client claims the privilege (Cal. Evid. Code § 954). A "lawyer who received or made a communication subject to the privilege under this article shall claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim the privilege under subdivision (c) of Section 954." Cal. Evid. Code § 955.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

California policy "supports a liberal construction in favor of the exercise of the privilege." *Benge*, 131 Cal. App. 3d at 344. "[A] person may discuss a *potential* legal problem with an attorney for the purpose of obtaining advice or representation, and the statements made are privileged whether or not actual employment ensues." *Id.* at 345 (emphasis supplied).

Potentially relevant here is the attorney-client privilege in the context of the insurer-insured relationship. California courts have explained the relationship as follows:

> In the insured-insurer relationship, the attorney characteristically is engaged and paid by the carrier to defend the insured. The insured and the insurer have certain obligations each to the other, as previously noted, arising from the insurance contract. Both the insured and the carrier have a common interest in defeating or settling the third party's claim. If the matter reaches litigation, the attorney appears of record for

> the insured and at all times represents him in terms measured by the extent of his employment.
>
> In such a situation, the attorney has two clients whose primary, overlapping and common interest is the speedy and successful resolution of the claim and litigation. Conceptually, each member of the trio, attorney, client-insured, and client-insurer has corresponding rights and obligations founded largely on contract, and as to the attorney, by the Rules of Professional Conduct as well. The three parties may be viewed as a loose partnership, coalition or alliance directed toward a common goal, sharing a common purpose which lasts during the pendency of the claim or litigation against the insured. Communications are routinely exchanged between them relating to the joint and common purpose - the successful defense and resolution of the claim. Insured, carrier, and attorney, together form an entity - the defense team - arising from the obligations to defend and to cooperate, imposed by contract and professional duty. This entity may be conceived as comprising a unitary whole with intramural relationships and reciprocal obligations and duties each to the other quite separate and apart from the extramural relations with third parties or with the world at large. Together, the team occupies one side of the litigating arena.

*Am. Mut. Liab. Ins. Co. v. Superior Court*, 38 Cal. App. 3d 579, 591–92 (Cal. Ct. App. 1974); *Bank of Am., N.A. v. Superior Court of Orange County*, 212 Cal. App. 4th 1076, 1083 (Cal. Ct. App. 2013), *review filed* (Feb. 26, 2013) ("When an insurer retains counsel to defend its insured, a tripartite attorney-client relationship arises among the insurer, insured, and counsel. As a consequence, confidential communications between either the insurer or the insured and counsel are protected by the attorney-client privilege, and both the insurer and insured are holders of the privilege.").

**B.  Analysis**

As set forth above, a "client" is "a person who . . . consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." Cal. Evid. Code § 951. Plaintiffs argue that the attorney-client privilege protects the communications at issue because they each "consulted with a lawyer in connection with the events that caused their property to be damaged" and thus each is a "client" under the California Evidence Code. (Plaintiffs' Brief at 3.) Plaintiffs assert that the lack of either intent to retain the lawyer or the actual retention itself are irrelevant because, whether or not actual retention ensued, the privilege may protect communications regarding a potential legal problem for the purpose of obtaining advice or representation. (*Id.* at 3 (citing *Benge*, 131 Cal. App. 3d at 345); *see also id.* at 4 (arguing that in the

context of the insurance "troika," communications as part of a preliminary consultation are protected).)

Defendants counter that Plaintiffs improperly assert a "blanket privilege" as to all communications with Liberty Mutual's counsel despite evidence showing that the purpose of the communications was not for Plaintiffs to seek legal advice. (Defendants' Brief at 1–2.) Defendants emphasize that Plaintiffs did not initiate the calls with the Stutman Firm, and that they were solicited to become named plaintiffs in this action. In fact, the conversations occurred *after* Liberty Mutual had already paid the claims for water damage. (*Id.* at 2.)[2] As to the argument that this was a privileged "consultation," Defendants argue that the "circumstances surrounding the consultation matter because they reveal whether an attorney-client relationship exists." (*Id.* at 3.) Or, more to the point: they reveal that the attorney-client relationship does not exist.

The Court agrees with Defendants. Plaintiffs have failed to meet their burden of establishing that the communications at issue were between a lawyer and a "client" as legally defined. First, Plaintiffs' argument that a blanket privilege arises because the communications arose within the tripartite insurance relationship is unavailing. The typical insurance relationship (and privilege thereunder) contemplates that "[b]oth the insured and the carrier have a common interest in defeating or settling [a] third party's claim." *Am. Mut. Liab. Ins. Co.*, 38 Cal. App. 3d at 592. Here, it cannot be said that the Stutman Firm had "two clients" with a "primary, overlapping and common interest" with respect to defense of a claim. *Id.* The primary cases cited by Plaintiffs are not factually similar to the situation here. In those cases, the court found evidence the "client" sought legal advice.[3]

---

[2] Defendants note that a potential conflict existed for Stutman Firm to "advise" Plaintiffs in light of both the insured and insurers' separate interests in the other undertaking responsibility to sue. (Defendants' Brief at 2 n.2.)

[3] *Benge*, 131 Cal. App. 3d at 342–43 & 346–47 (common goal of the union members to obtain legal advice during a closed union meeting protected communications with the lawyer present); *Bank of Am., N.A. v. Superior Court of Orange County*, 212 Cal. App. 4th at 1083 (generally holding "tripartite attorney-client relationship arises when a title insurer retains counsel to prosecute an action on behalf of the insured pursuant to the title policy"); *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1428–29 (Cal. Ct. App. 1999) (reversing lower court's denial of motion to disqualify where counsel "simultaneously represent[ed]" insurer and insured clients "with adverse interests"); *Am. Mut. Liab. Ins. Co.*, 38 Cal. App. 3d at 593 (examining privileges where insured and insurer had become adversaries).

Plaintiffs' argument that its "right to investigate, evaluate, and determine whether to pursue a claim for subrogation for its insured losses" does not vitiate the analysis of whether an attorney-client relationship existed. Plaintiffs ignore that as the purported "client," their own intent and purpose must be the focus of the inquiry. Plaintiffs do not automatically become clients by virtue of being an insured. Plaintiffs seem to emphasize two facts from the deposition testimony to bolster the "client" status argument: (1) while Trabakoolas did not hire the Stutman Firm, he thought the firm would be representing him if it was representing Liberty Mutual (Trabakoolas Dep. 51:5–21); and (2) Stetson was informed by Liberty Mutual that an attorney may be calling (Stetson Dep. 13:23–14:18 & 15:24–16:15). The Court is unwilling to infer from these facts that a purpose of retaining counsel or securing legal advice existed where Plaintiffs' own testimony contradicts such a conclusion. Moreover, California courts have rejected contentions that all communications exchanged in the insured-insurer-attorney context are privileged. *Travelers Ins. Companies v. Superior Court*, 143 Cal. App. 3d 436, 448 (Cal. Ct. App. 1983) (rejecting petitioner's contention that communications between client and attorney were privileged as a matter of law)[4]; *see Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[T]he attorney-client privilege . . . is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney. . . . Not all communications between attorney and client are privileged.").

Second, Plaintiffs' own testimony indicates they did not need further assistance from Liberty Mutual nor did they have any intent to pursue litigation against Defendants. As to Plaintiff Trabakoolas, he had no interest in litigation prior to his conversations with the Stutman Firm. (Trabakoolas Dep. 114:18–22; *id.* 112:18–113:5 (took no steps to file litigation on his own, to look for a lawyer to help file litigation, nor had litigation ever occurred to him prior to conversation with the Stutman Firm).) At the time of the initial conversation, Liberty Mutual had already paid Trabakoolas' claim. (*Id.* 112:5–17; *id.* 50:4–11 (spoke to attorney about Liberty Mutual's efforts to

---

[4] In *Travelers Ins.*, the insured-petitioner (an attorney) submitted information to his insurer for further transmittal to the insurer's attorney in connection with the petitioner's potential malpractice liability. 143 Cal. App. at 447–52. There, the court held that if it appeared that such a communication served a dual purpose, one for transmittal to an attorney in the course of employment and one not related to that purpose, then, under the circumstances, the Court must examine which purpose predominated. *Id.* at 452. This test is called the "dominant purpose" test. No purpose, much less a dual purpose, exists here to be tested.

recover payments after his house was repaired)[5].)  Only after he was contacted (and after Mr. Howard[6] explained to him about "water lines breaking") did he decide that he wanted to be a class representative.  (*Id.* 117:2–12; *see id.* 111:22–25 (decided to be part of this litigation after speaking to Mr. Howard of the Saltz Firm); 60:12–25 (decided he wanted to be a plaintiff after he was called).)

As to Plaintiff Stetson, Liberty Mutual paid her claim for water damage prior to this lawsuit.  (Stetson Dep. 13:3–22; 45:15–20.)  She had been informed by Liberty Mutual that an attorney may contact her (*id.* 15:24–16:15), but Stetson did not know Dan Hogan of the Stutman Firm prior to speaking with him.  (*Id.* 14:20–15:17; *id.* 25:9–11 (she did not choose her lawyers, but "they chose [her]"); *see* Ex. B to Declaration of Todd Benoff).  She never hired the Stutman Firm to be her attorney and she never understood the firm or Mr. Hogan to be her attorney.  (Stetson Dep. 16:23–17:14.)  Eventually, another attorney from the Saltz Firm contacted her and now represents her in this matter.  (*Id.* 26:5–27:15 & 40:17–20 (Mr. Hogan "passed [her] over" to attorney Pat Howard, who she did not know).)  Stetson did not decide to initiate litigation herself, but the attorney who filed suit asked her to be a named plaintiff.  (*Id.* 45:3–17; 40:3–16 (Stetson didn't do anything with respect to litigation until she was contacted by Mr. Hogan, and waited to hear back from him).)[7]

The record evidences no support for the argument that Plaintiffs had any purpose of retaining or seeking legal advice (whether a consultation or otherwise) from the Stutman Firm.  Litigation was not even potentially on Plaintiffs' minds when they were contacted, as their claims had already been paid.  It was only *after* Plaintiffs spoke with the Stutman Firm that they had any interest in suing.[8]  As

---

[5] Additional excerpts of the Trabakoolas deposition transcript have been attached as Ex. A to Declaration of Todd A. Seaver in Support of Plaintiffs' Brief Showing Cause Regarding Attorney-Client Communications (Dkt. No. 113).

[6] The Court assumes, based on the excerpts of deposition transcripts provided, that Trabakoolas' references to "Mr. Howard" are to Patrick Howard, counsel of record for Plaintiffs.  (*See also* Stetson Dep. 26:5–27:15.)

[7] Stetson also indicates that she did not have litigation in mind when she returned her toilet connector to Liberty Mutual.  (Stetson Dep. 39:7–22 ("I'll let them handle it.  I wasn't worried about who or when.  I just thought: I have to send my part in.  And if it assists, fine.  If it doesn't better than sitting at home, you know.").)

[8] Defendants repeatedly characterize the Stutman Firm calling Plaintiffs as "cold-calling."  While the Court does not take a position on whether or not the communication was improper, a colorable argument has been made that the Stutman Firm sought to solicit Plaintiffs.

7

such, they had neither a purpose for retaining a lawyer, nor is there any indication that they intended to secure legal services or advice during the phone call. Accordingly, Plaintiffs have failed to make a preliminary showing that they were each a "client" under California Evidence Code section 951 either directly or through any showing of a "common interest." *Am. Mut. Liab. Ins. Co.*, 38 Cal. App. 3d at 591–92.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs have failed to meet their burden of establishing that the conversations between Plaintiffs and the Stutman Firm are subject to the attorney-client privilege. As such, Plaintiffs are **ORDERED** to re-appear for deposition on this topic. The deposition of each Plaintiff on this matter shall not exceed 45 minutes.

**IT IS SO ORDERED.**

Dated: April 12, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**