UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TRABAKOOLAS, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WATTS WATER TECHNOLOGIES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 12-cv-01172-WHO<br><br>**ORDER GRANTING MOTION TO ENFORCE FINAL ORDER AND JUDGMENT**<br><br>Re: Dkt. No. 316 |

A group of plaintiffs filed this class action for claims arising from alleged defects of an acetal coupling nut ("Coupling Nut") on the Flexible Plumbing Toilet Connector ("Toilet Connector") designed and manufactured by defendants Watts Water Technologies, Inc., Watts Regulator Co., and Wolverine Brass, Inc. (collectively "Watts").  The parties subsequently agreed to the terms of a $23 million class settlement, which I approved on August 5, 2014.  *See* Final Order and Judgment [Dkt. No. 304]; Settlement Agreement [Dkt. No. 273-1].  The Settlement Class, defined as "all individuals and entities, that own or owned, or lease or leased, a residence or other structure located in the United States containing a Toilet Connector," agreed to a broad release of claims "regarding or related to any alleged failure of a Coupling Nut on a Toilet Connector."  *See* Final Order and Judgment ¶ 2, 18; Settlement Agreement ¶ 38, 92.

Watts moves for an order enforcing this court's Final Order and Judgment and enjoining Atlantic Surgical Associates P.A. ("Atlantic Surgical") and Merchants Insurance Group as subrogee of Atlantic Surgical Associates P.A. ("Merchants") from pursuing claims against Watts in separate lawsuits pending in the New Jersey Superior Court, Monmouth County: *Merchants Insurance Group a/s/o Atlantic Surgical Associates, P.A. v. Watts Water Technologies Inc., et al.*,

Case No., MON-L-001112-20 (filed April 2, 2020) and *Atlantic Surgical Associates, P.A., v. Watts Water Technologies, Inc., et al.*, Case No. MON-L-000451-21 (filed February 9, 2021) (collectively the "New Jersey Actions"). Because the damages suffered by Atlantic Surgical and Merchants arose as a result of an August 2018 flooding incident allegedly caused by a defective Toilet Connector in premises leased in a building containing a Toilet Connector, they were part of the Settlement Class and their claims are released by the Settlement Agreement. Watts's motion is GRANTED and Atlantic Surgical and Merchants are ENJOINED from pursuing their claims in the New Jersey Actions.

## BACKGROUND

### I. THIS CLASS ACTION

On March 28, 2012, a group of plaintiffs filed this class action against Watts for claims arising from alleged defects in their Toilet Connectors. Second Amended Complaint ("SAC") [Dkt. No. 130] ¶ 1. To permit water flow into the toilet tank, a Toilet Connector connects to the base of the toilet using a plastic coupling nut. *Id.* Plaintiffs alleged that these plastic coupling nuts are uniformly defective in their design and labeling. *Id.* As a result, the Toilet Connectors pose a substantial risk of failure permitting the unrestricted flow of water and causing catastrophic water damage to property. *Id.*

In October 2013, after plaintiffs successfully defended three motions to dismiss and the parties engaged in discovery, this action was stayed pending settlement negotiations. The parties reached a settlement agreement on December 6, 2013, which was preliminarily approved on February 14, 2014. *See* Order Granting Preliminary Approval of Class Action Settlement; Certification of Settlement Class; and Approval of Form and Content of Proposed Notice [Dkt. No. 276].

A Final Order and Judgment was entered on August 5, 2014, approving the Settlement Agreement and certifying the following Settlement Class:

> ALL INDIVIDUALS AND ENTITIES, THAT OWN OR OWNED, OR LEASE OR LEASED, A RESIDENCE OR OTHER STRUCTURE LOCATED IN THE UNITED STATES CONTAINING A TOILET CONNECTOR.

2

Final Order and Judgment at p.1 and ¶¶ 2, 5; Settlement Agreement ¶ 38 (definition of "Settlement Class"). Settlement Class Members, and any persons or entities that may assert claims on behalf of any Settlement Class Members, were "enjoined from participating in any other proceeding relating to the claims released in the Settlement Agreement." Final Order and Judgment at p. 2; *see also id.* ¶ 22 ("All Settlement Class Members and all Persons that have, can or are entitled to make or pursue a claim or action through or in the name or right of a Settlement Class Member, are hereby permanently enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise) or receiving benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding in any jurisdiction based on or relating to the claims released in the Settlement Agreement, or the facts and circumstances related thereto….").

The Settlement Agreement defines the "Releasing Parties" as "all Settlement Class Members and any Persons who participates in or receives any payment under this Agreement." Settlement Agreement ¶ 92. The "Releasing Parties" are to "release and forever discharge each of the Watts Defendants . . . from each and every claim of liability . . . regarding or related to any alleged failure of a Coupling Nut on a Toilet Connector . . . which have been or could have been alleged in the Class Action, and similar litigation ('Released Claims')." *Id.* The release language set forth in paragraphs 92 to 99 of the Settlement Agreement was adopted and approved in the Final Order and Judgment. *Id.* ¶¶ 92–99; Final Order and Judgment ¶ 18.

From the $23 million Common Fund ($15 million after deductions), class members could make claims for (i) replacement of a Toilet Connector (the "Replacement Remedy") within one year of the Final Order and Judgment (*i.e.*, by August 5, 2015); and/or (ii) a cash payment for property damage suffered from a failed Toilet Connector (the "Property Damage Remedy") within five years of the Final Order and Judgment (*i.e.*, by August 5, 2019). Final Order and Judgment ¶¶ 12–13; Settlement Agreement ¶¶ 114–15.[1] I reserved "exclusive and continuing jurisdiction over

---

[1] On November 1, 2019, after the five-year period ended on August 5, 2019, class counsel submitted a letter reporting that "all funds remaining in the Common Fund as of that date were distributed as directed," that "no funds remain," and thus "no further proceedings regarding the distribution of existing funds are necessary before the Court." Letter from Simon Bahne Paris

3

the Class Action, the Class Representatives, the Settlement Class Members, Persons who are entitled to claim through or in the name or right of Settlement Class Members, and the Defendants for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Agreement, the Court's Preliminary Approval Order, and this Judgment." Final Order and Judgment ¶ 23.

## II. THE NEW JERSEY STATE COURT ACTIONS

Atlantic Surgical leased two condominium units, Units 102 and 103, of the premises located at 107 Monmouth Road, West Long Branch, New Jersey 07764 (hereinafter the "107 Monmouth Road" property). *See* Declaration of Stephen G. Traflet ("Traflet Decl.") [Dkt. No. 316-1], Ex. A (2020 NJ Compl. ¶ 10) and Ex. B (2021 NJ Compl. ¶ 10).[2] On or about August 1, 2018 (one year before the claim period ended in the *Trabakoolas* class action), a water flooding event occurred at the offices of Atlantic Surgical. The flooding was allegedly caused by a defective Watts Toilet Connector installed in the bathroom of the unit above Atlantic Surgical's property—Unit 202 owned by Dr. Bruce Langer. Atlantic Surgical suffered damages as a result of the flood. 2020 NJ Compl. ¶ 11–15; 2021 NJ Compl. ¶¶ 11–14.

On April 2, 2020, Atlantic Surgical's insurer, Merchants, filed suit against Watts, seeking to recover the over $478,000 it paid for the damages. 2020 NJ Compl. ¶ 14–15. On February 9, 2021, Atlantic Surgical filed a separate suit, claiming that although it received reimbursement from its insurance carrier for certain damages it sustained, it did not receive compensation for all of the damages it sustained as a result of the flooding. 2021 NJ Compl. ¶ 13–14.

Sometime in September 2020, Watts received photographs of the Toilet Connector at issue

---

[Dkt. No. 313] 1. However, the Claims Administrator, in conjunction with the Federal Bureau of Investigations, concluded that the Settlement Fund was victim of fraud from an attorney who submitted fraudulent claims. *Id.* The Claims Administrator identified payments of $530,423.97 that were subject to the fraud. *Id.* at 2. Class counsel "anticipates recovery of some portion of those funds for further distribution to the Settlement Class Members" in this matter. *Id.*

[2] Counsel for Atlantic Surgical contends that he made a mistake in alleging that Atlantic Surgical "was the owner" of Units 102 and 103, when in fact Atlantic Surgical only leased the units. Declaration of Frank Winston ("Winston Decl.") [Dkt. No. 324-1] ¶ 3. He intends to "submit a Proposed Amended Complaint to counsel for all parties to The New Jersey State Court action to correct that allegation, and to correct the prayer for relief to the Complaint to withdraw the claims for real property damage, before the instant motion is heard and decided." *Id.*

4

1 in the New Jersey Actions. Traflet Decl. ¶ 6, Ex. E. Based on these photos, it confirmed that the Toilet Connector was part of the *Trabakoolas* settlement—specifically, that it had a Coupling Nut. *Id.*; *see* also Declaration of Michael Mullavey ("Mullavey Decl.") [Dkt. No. 316-2] ¶¶ 3–4. On September 25, 2020, Watts' counsel sent the photos to Merchants' counsel and requested that he dismiss the pending suit. Traflet Decl., Ex. F.

On February 16, 2021, after Watts received the Master Deed and the Bylaws of the 107 Monmouth Road property in document production, *see* Traflet Decl., Exs. G and H, it again asked Atlantic Surgical and Merchants to dismiss the two New Jersey Actions because Atlantic Surgical possessed a financial interest in the structure in which the subject Toilet Connector was located. *Id.*, Exs. I and J. On March 4, 2021, counsel for Merchants communicated that, as he interpreted the *Trabakoolas* Settlement Agreement, Atlantic Surgical was not within the Settlement Class, and therefore would not dismiss either complaint. *Id.*, Ex. K.

On April 9, 2021, Watts filed a motion in this court seeking to enforce the *Trabakoolas* Final Order and Judgment and enjoin the New Jersey Actions. I issued an order on May 7, 2021 informing the parties that "I intend to consider the merits of Watts' motion and whether the New Jersey Actions should be enjoined." Order Setting Briefing Schedule for Motion to Enforce Final Order and Judgment [Dkt. No. 318]. Counsel for Atlantic Surgical and Merchants have now appeared in this court for the purposes of opposing Watts' motion. The matter is fully briefed and was heard on August 18, 2021.

**LEGAL STANDARD**

The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act, however, forbids federal courts from enjoining state court proceedings except (1) as expressly authorized by Act of Congress, (2) where necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments. *See* 28 U.S.C. § 2283; *Sandpiper Vill. Condo. Ass'n. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). These three exceptions are to be narrowly construed: "Any doubts as to the propriety of a federal injunction against state

court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).

**DISCUSSION**

Atlantic Surgical and Merchants do not dispute that I have jurisdiction to interpret the Settlement Agreement and resolve the merits of Watt's motion. *See* Final Order and Judgment ¶ 23; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB, 2018 WL 1588012, at *4 (N.D. Cal. Mar. 30, 2018) (deciding "to exercise its ancillary jurisdiction" to rule on the defendant's motion to enforce judgment because defendant "took the reasonable step of filing an opposition in the New Jersey action, while preserving its right to ask this Court to adjudicate whether the settlement agreement's release bars the new claim"). The dispute here is whether Atlantic Surgical and Merchants are members of the *Trabakoolas* Settlement Class and whether their claims are within the scope of the Settlement Agreement such that the New Jersey Actions should be enjoined.

**I.    SETTLEMENT CLASS**

The Settlement Class is defined as: "all individuals and entities, that own or owned, or lease or leased, a residence or other structure located in the United States containing a Toilet Connector." Settlement Agreement ¶ 38; Final Order and Judgment ¶ 2. Atlantic Surgical argues that it does not fall under that definition because the defective Toilet Connector at issue in the New Jersey Actions was not contained in either of the two units occupied by Atlantic Surgical. The subject Toilet Connector that failed was located above Atlantic Surgical's suites in Unit 202 owned by Dr. Bruce Langer and not owned by Atlantic Surgical. Atlantic Surgical interprets the adjective phrase "containing a Toilet Connector" as modifying the nouns, "a residence or other structure." Under that interpretation, it argues that it cannot be a member of the class because it neither owned nor leased the exact unit that contained the subject Toilet Connector. Merchants shares the same interpretation and contends that Atlantic Surgical cannot be a member of the class because the Toilet Connector that failed and the subject of Merchants' product liability action was not contained in the units leased by Atlantic Surgical.

6

1    Watts argues that Atlantic Surgical and Merchants' interpretation of the Settlement Class
2    definition is too narrow.  In its view, the terms of the Settlement Agreement, including its
3    attachments, reject the contention that an individual or entity making a claim needs to own or lease
4    the specific unit containing a Toilet Connector.  For example, the Settlement Agreement states that
5    it is intended "to bind all Persons who own or rent, have owned or rented, or in the future may
6    own or rent, or have a present or future *financial interest or stake in, buildings, homes, residences*
7    *or any other structures* in the United States which contain or have ever contained a Toilet
8    Connector."  Settlement Agreement ¶ 112 (emphasis added).  This definition, Watts argues, does
9    not require that covered individuals or entities own or lease the entire unit, building, or other
10   structure that contains the Toilet Connector.  Rather, it incorporates the entire building or structure
11   that contains a Toilet Connector, and anyone who owns or leases any interest in that structure.
12   Atlantic Surgical and Merchants dispute the significance of paragraph 112 of the
13   Settlement Agreement, arguing that it broadens the definition of the Settlement Class reflected in
14   the Final Order and Judgment and in the notice given to potential class members, *i.e.*, "All
15   individuals and entities, that own or owned, or lease or leased, a residence or other structure
16   located in the United States containing a Toilet Connector."  Final Order and Judgment ¶ 2.  But
17   the Notice and Claim Forms attached to the Settlement Agreement, which were approved by the
18   Final Order and Judgment, undercut that argument and further support Watts' position.  *See id.* ¶
19   15 (finding "notice to the Settlement Class of the pendency of the Class Action and of this
20   settlement . . . constituted the best notice practicable under the circumstances to all persons and
21   entities within the definition of the Settlement Class, and fully complied with the requirements of
22   Federal Rules of Civil Procedure Rule 23 and due process").
23   The Notice Form answers the question "Am I part of the settlement?" by stating that the
24   "settlement includes anyone who owns or owned (or leases or leased) a residence or other
25   structure in the United States containing a Watts toilet connector with an acetal coupling nut," and
26   adds that "[t]his includes any person or entity that suffered property damage and/or paid to repair
27   property damage caused by the failure of an acetal coupling nut on a Watts toilet connector."
28   Settlement Agreement, Ex. A at 5.  Similarly, the Notice Form answers the question "Who can file

7

a claim under the settlement?" by stating that "a Settlement Class Member must own a Watts toilet connector with an acetal coupling nut," and adds that "[a]ny person or entity who had property damage and/or paid to repair property damage as a result of a failed acetal coupling nut of a Watts toilet connector may also file a claim." *Id.* at 6. The Claim Form advises individuals or entities to use the form "if you own, owned, lease, or leased, a residence or other structure located in the United States containing a Watts toilet connector with an acetal coupling nut, *including if you suffered property damage and/or paid to repair property damage caused by the failure of an acetal coupling nut on a Watts toilet connector.*" Settlement Agreement, Ex. D at 1 (emphasis added). Together, the Notice and Claim Forms clarify (to potential class members) that the Settlement Class includes not only those who own or lease the specific unit where the Toilet Connector is located, but also those within a structure affected by a defective Toilet Connector.

Atlantic Surgical and Merchants provide the Master Deed of the 107 Monmouth Road property to support their contention that the Toilet Connector at issue in New Jersey Actions is part of Dr. Langer's unit only and not the complex as a whole. The Master Deed states in part: "All plumbing at the point of connection for water supply to the Unit and all water supply piping from that point on shall be considered part of the Unit. All fixtures, faucets, water heater, piping and incidental for the exclusive use of a Unit shall be a part of the Unit." Declaration of Boris Volshteyn, M.D. ("Volshteyn Decl.") [Dkt. No. 324-2], Ex. 2 ¶ 3. They also cite a New Jersey Supreme Court case that held "the Legislature clearly intends that condominium owners be accorded generally the same rights and privileges as owners of *separate and independent* parcels of real property." *AMM, Inc. of New Jersey v. South Brunswick Rent Leveling BD.*, 93 NJ 518, 529 (1983) (emphasis added). Accordingly, they argue, the definition of the Settlement Class would only apply to Dr. Langer, the owner of the unit that contained the subject Toilet Connector, and does not extend to Atlantic Surgical, a party who leased the units below.

Atlantic Surgical and Merchants fail to explain why New Jersey's condominium law is applicable here. The Settlement Agreement states that it is governed by California law. *See* Settlement Agreement ¶ 140 ("This Agreement shall be governed by the laws of the State of California, without regard to its conflict of laws rules, precedent, or case law."). More

8

1 importantly, the terms of the Settlement Agreement and its attachments (which Atlantic Surgical
2 and Merchants pay little attention to) provide the appropriate context for interpreting its meaning
3 and, as discussed above, indicate that Atlantic Surgical and Merchants fit within the settlement
4 class definition. Even if Atlantic Surgical did not own the exact unit where the Toilet Connector
5 was located, it leased a unit in that same office building, suffered damages as a result of the
6 defective Toilet Connector located in the unit above it, and is seeking to recover those damages
7 from Watts. *See* 2020 NJ Compl. ¶ 15 ("As a result of the payments to its insured, [Merchants]
8 seeks to recover the aforementioned damages, owing to the Watts Water Defendants' Strict
9 Product Liability and breach of warranties."); 2021 NJ Compl. ¶ 14 ("Although [Atlantic Surgical]
10 received reimbursement from its insurance carrier for certain damages it sustained, it has not
11 received compensation for all of the damages it sustained as a result of the flooding damage.").
12 That is the type of situation covered by the Settlement Agreement, as reflected by the Settlement
13 Agreement itself as well as the Notice and Claim Forms attached to it.

14 Atlantic Surgical and Merchants' narrow interpretation of the Settlement Class definition
15 would frustrate the goal of the *Trabakoolas* settlement—to resolve claims between Watts and
16 those damaged by its allegedly defective Toilet Connectors. Under their constrained
17 interpretation, only those persons and entities who owned or leased the exact portion of a building
18 or structure that contained the Toilet Connector would be able to recover from the settlement, but
19 not persons and entities who owned/leased portions in the same building and who also suffered
20 damages by the same Toilet Connector. That interpretation is simply not supported by the
21 Settlement Agreement and its attachments.

## II. TYPE OF CLAIMS

The Settlement Agreement defines Claimant as:

> a Settlement Class Member (including Class Representatives) tendering a Claims Form seeking a Property Damage Remedy from the Common Fund under the terms of this Agreement, including any Person entitled to make a Settlement Claim on behalf of a Settlement Class Member to the extent permissible by law or this Agreement, such as (but not limited to) a subrogated insurance carrier or a Person who claims contribution or indemnity against Watts based on claims for alleged failures of Coupling Nuts on Toilet Connectors within the scope of this Agreement. The term 'Claimant' shall also include any

9

Person who elects to submit a claim pursuant to the terms of this Agreement.

Settlement Agreement ¶ 3. To the extent that Claimant includes "a Settlement Class Member," the same analysis from above applies—Atlantic Surgical is a Settlement Class Member because it holds a leasehold interest in a structure containing a Toilet Connector.

Atlantic Surgical and Merchants argue that their claims against Watts in the New Jersey Actions are not covered by the Settlement Agreement given the latter part of the Claimant definition—"any Person entitled to make a Settlement Claim on behalf of a Settlement Class Member to the extent permissible by law or this Agreement, *such as (but not limited to)* a subrogated insurance carrier or a Person who claims *contribution or indemnity* against Watts based on claims for alleged failures of Coupling Nuts on Toilet Connectors within the scope of this Agreement." Settlement Agreement ¶ 3 (emphasis added). The New Jersey Actions involve claims for strict products liability under New Jersey's Product Liability Act and for breach of warranty, not contribution or indemnity.

Watts responds correctly that such an interpretation constrains the reading of Claimant because a subrogated insurer or a person making a contribution or indemnity claim is just one example of the type of entity or individual that might be a Claimant but might not otherwise be a Settlement Class Member. Atlantic and Merchants' interpretation ignores the "such as (but not limited to)" language preceding the specific example.

Watts also cites other portions of the Settlement Agreement to illustrate that claims of contribution or indemnity were not the only type of claims intended to be released by the Settlement Agreement, but any claim associated with a Toilet Connector loss, including those pursued by Atlantic Surgical and Merchants in the New Jersey Actions. *See* Settlement Agreement ¶ 92 (stating that the "Releasing Parties," shall "release and forever discharge . . . *from each and every claim of liability*, on any legal or equitable ground whatsoever, including relief under federal law or the laws of any state, *regarding or related to any alleged failure of a Coupling Nut on a Toilet Connector*") (emphasis added). Even if the *Trabakoolas* class action did not involve the exact type of claims alleged in the New Jersey Actions, the Settlement Agreement is clear that it covers all claims "regarding or related to any alleged failure of a Coupling Nut on a

Toilet Connector" and that "[t]he release provided by this Agreement shall be and is broad and expansive and shall include release of all damages, burdens, obligations of liability of any sort . . . which might otherwise have been made in connection with any claim relating to any failure of the Coupling Nut on a Toilet Connector." Settlement Agreement ¶¶ 92, 93 (emphasis added); *see* Final Order and Judgment ¶ 18 (adopting and approving the release language set forth in paragraphs 92 through 99 of the Settlement Agreement).

The rule in the Ninth Circuit is:

> a settlement agreement may preclude a party from bringing a related claim in the future "even though the claim was not presented and might not have been presentable in the class action," but only where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action."

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). This follows from principles of claim preclusion and res judicata, pursuant to which a prior action may bar a subsequent action between the same parties only when the two actions arise from the same transaction or occurrence. *See id.* Applying the standard in *Hesse*, the Ninth Circuit reversed the district court's dismissal of claims that came within the broad definition of a release in a prior settlement agreement, but which were not based on the identical factual predicate of the claims at issue in the original proceedings. It held that the settlement "cannot preclude the [plaintiffs'] unique cause of action, regardless of the expansive release contained in [the earlier settlement]." *Id.* at 592; *see also Boeing Co.*, 517 F.3d at 1134 ("While Boeing may have drafted the settlement agreement to include as broad a release as possible, the release would have only been enforceable as to subsequent claims . . . depending upon the same set of facts.") (internal quotations marks omitted).

A recent opinion from this District, *In re Volkswagen*, 2018 WL 1588012, at *5, provides an illustrative example of when clams are considered part of an "identical factual predicate." In that multi-district litigation, a group of Volkswagen-branded franchise dealers filed a class action against Volkswagen Group of America, Inc. ("VWGoA") and other defendants based on fraudulent misrepresentations made to them about the emissions levels of its TDI "clean diesel" vehicles. *Id.* at *2. The parties reached a settlement agreement that released "all claims related in

11

1    any way to the TDI Matter." *Id.* at *3. In a separate matter, Altomare Auto Group LLC ("AAG"),
2    an entity that opened a dealership in New Jersey, filed an action in New Jersey state court alleging
3    that its former owner was fraudulently induced to open the dealership by VWGoA because
4    VWGoA promised it would "provide the Union Dealership with a mix and quantity of new-
5    vehicle inventory that was sufficient for the dealership to operate successfully, but then provid[ed]
6    the dealership with only 40 new vehicles when it opened." *Id.* at *1. Three other entities joined
7    that New Jersey action (the "Intervenor Plaintiffs") and brought a separate fraud claim in which
8    they alleged that "VWGoA made various fraudulent misrepresentations to them about the
9    emissions levels of its 'clean diesel' vehicles." *Id.* at *2. VWGoA moved to enforce the franchise
10   dealers' settlement agreement and sought an order to enjoin the vehicle inventory claims as well as
11   the emissions fraud claim in the New Jersey action. *Id.* at *3.

12   The court enjoined the emissions fraud claim because it was "clearly 'based on the
13   identical factual predicate' as that underlying the claims in the franchise dealers' class action." *Id.*
14   at *5 (quoting *Hesse*, 598 F.3d at 590). But it did not enjoin the vehicle inventory claims.
15   Although the release in the franchise dealers' class action was broad, the vehicle inventory claims
16   were "based on allegations that are far afield from the subject matter of the franchise dealers' class
17   action." *Id.* It noted that "[n]either AAG nor the Intervenor Plaintiffs [made] any mention of
18   [Primary Area of Influence] in their state court complaints; instead, their allegations focus[ed] on a
19   promise by VWGoA to provide the Union Dealership with a certain level of inventory, and
20   VWGoA's alleged failure to honor that promise. No similar conduct was alleged in the class
21   action." *Id.*

22   The claims asserted by Atlantic Surgical and Merchants in the New Jersey Actions are not
23   "far afield" from the claims at issue in the *Trabakoolas* class action settlement. They are "based
24   on the identical factual predicate"—damages caused by a Coupling Nut on a Toilet Connector, the
25   very piece of equipment that the *Trabakoolas* class action alleged was defectively designed,
26   manufactured, and labeled by Watts. *Compare* SAC ¶¶ 1, 13 (alleging that "the Toilet Connector
27   poses a substantial risk of failure permitting the unrestricted flow of water into the home causing
28   catastrophic water damage to property" and that "[o]n July 19, 2011, after returning from a

12

weekend vacation, Plaintiff Trabakoolas arrived home to discover that Defendants' Toilet Connector failed causing water to flood his home.") *with* 2020 NJ Compl. ¶ 11–13 (alleging that a "water flooding event occurred at the offices of [Atlantic Surgical]" on August 1, 2018 "caused by a defective Watts toilet connector installed in the bathroom of the unit above plaintiff's insured property" and that a claim was submitted to Merchants "for the damage and destruction of the property of the insured and an interruption in its ability to conduct its business") *and* 2021 NJ Compl. ¶¶ 11–13 (same).

Accordingly, even though Atlantic Surgical and Merchants' claims for strict liability and breach of warranty were not directly presented in the *Trabakoolas* class action, those claims are based on an identical factual predicate of the claims at issue in the *Trabakoolas* class action. The broad release of claims in the *Trabakoolas* Settlement Agreement "of all damages, burdens, obligations of liability of any sort . . . which might otherwise have been made in connection with any claim relating to any failure of the Coupling Nut on a Toilet Connector" is enforceable. Settlement Agreement ¶ 93.

## CONCLUSION

For the foregoing reasons, Watts' motion to enforce the Final Order and Judgment in the *Trabakoolas* class action is GRANTED. Atlantic Surgical and Merchants are ENJOINED from pursuing their claims in the New Jersey Actions.

**IT IS SO ORDERED.**

Dated: August 27, 2021



William H. Orrick
United States District Judge